UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JAMES MTUME,

*Plaintiff*,

v.

SONY MUSIC ENTERTAINMENT, a Delaware partnership,

*Defendant*.

Case No. 1:18-cv-06037-ER

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SONY MUSIC ENTERTAINMENT'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........................................................................................1

II. STATEMENT OF LEGAL BACKGROUND AND FACTS..........................................2

    A. TERMINATION OF COPYRIGHT GRANTS.....................................................2

    B. "GAP WORKS" AND "GAP GRANTS." .............................................................4

    C. THIS LAWSUIT.....................................................................................................6

III. STANDARD OF REVIEW ...............................................................................................8

IV. ARGUMENT......................................................................................................................8

    A. PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF BECAUSE HIS TERMINATION NOTICE IS INVALID. .................................8

    B. PLAINTIFF'S REMAINING CLAIMS MUST ALSO BE DISMISSED. ........................................................................................................13

        1. Plaintiff Lacks the Ownership Interest Necessary to State a Claim for Copyright Infringement. ............................................................13

        2. Plaintiff Is Not Entitled to an Accounting. ..............................................14

V. CONCLUSION ................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................8

*Burroughs v. Metro-Goldwyn-Mayer, Inc.*,
    683 F.2d 610 (2d Cir. 1982) .................................................................................................12

*Caldwell v. ABKCO Music & Records, Inc.*,
    703 N.Y.S.2d 97 (App. Div. 2000) .......................................................................................14

*Creazioni Artistiche Musicali, S.R.L. v. Carlin Am., Inc.*,
    No. 17-266-cv, 2018 WL 4037292 (2d Cir. Aug. 23, 2018) .................................................14

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ...................................................................................................8

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005) ...................................................................................................8

*Mills Music, Inc. v. Snyder*,
    469 U.S. 153 (1985) ................................................................................................................4

*Poley v. Sony Music Entm't, Inc.*,
    619 N.Y.S.2d 923 (Sup. Ct. 1994), *aff'd*, 222 A.D.2d 308 (1995) .......................................14

*Rodgers v. Roulette Records, Inc.*,
    677 F. Supp. 731 (S.D.N.Y. 1988) .......................................................................................14

*Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*,
    890 F. Supp. 2d 398 (S.D.N.Y. 2012) ..................................................................................13

*Wilson v. Dynatone Publ'g Co.*,
    892 F.3d 112 (2d Cir. 2018) .................................................................................................14

**STATUTES**

17 U.S.C. § 101 ................................................................................................................................3

17 U.S.C. § 111 ................................................................................................................................5

17 U.S.C. § 201 ................................................................................................................................3

17 U.S.C. § 203 .......................................................................................................................passim

17 U.S.C. § 204 ............................................................................................................................. 5

17 U.S.C. § 205 ............................................................................................................................. 5

17 U.S.C. § 304 .............................................................................................................. 2, 3, 4, 5

17 U.S.C. § 406 ............................................................................................................................. 5

17 U.S.C. § 501 ........................................................................................................................... 14

17 U.S.C. § 512 ............................................................................................................................. 6

**OTHER AUTHORITIES**

37 C.F.R. § 201.10 ................................................................................................................ passim

Termination of Transfers and Licenses Covering Extended Renewal Term, 42
    Fed. Reg. 45,916 (Sept. 13, 1977) ......................................................................................... 10

Gap in Termination Provisions, 76 Fed. Reg. 32,316 (June 6, 2011) ......................................... 5, 6

Copyright Office Technical Amendments, 82 Fed. Reg. 9,354 (Feb. 6, 2017) ............................... 4

Modernizing Copyright Recordation, 82 Fed. Reg. 52,213 (Nov. 13, 2017) ................................. 4

U.S. Copyright Office, Analysis of Gap Grants under the Termination Provisions
    of Title 17 (Dec. 7, 2010), https://www.copyright.gov/reports/gap-grant-
    analysis.pdf ................................................................................................................. 5, 6, 9, 10

Fed. R. Civ. P. 12 ........................................................................................................................... 1

Defendant Sony Music Entertainment ("Sony") by its attorneys, Jenner & Block LLP, respectfully submits this Memorandum in support of its motion to dismiss the Amended Complaint, Dkt. No. 11, brought by Plaintiff James Mtume ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     PRELIMINARY STATEMENT

This matter relates to the termination provisions of the Copyright Act of 1976, which permit an author or his or her successors to terminate certain prior grants of copyright rights during specific windows of time and to reclaim the rights contained in the prior grants, if specific requirements are met.  On or about July 6, 2015, Plaintiff's counsel, who advertises his experience in "Copyright Termination,"[1] sent a termination notice to Sony purporting to terminate grants of rights in certain sound recordings of musical performances by the Plaintiff's band (the "Termination Notice").  That notice separately listed nine categories of information. However, it failed to comply with the one requirement set forth in the federal termination regulations that is specifically applicable to purported terminations of grants of rights to post-1977 works made pursuant to pre-1978 agreements (such as the one cited in the Termination Notice)—that the notice recite as "the date of execution" the date that each sound recording was created.

In his Amended Complaint, Plaintiff seeks a declaration that the Termination Notice is valid and renders him the copyright owner of those recordings.  He also brings associated claims for federal copyright infringement and an accounting that hinge upon the success of his request

---

[1] Intellectual Property Litigation, Rosemberg Law, https://www.rosemberglaw.com/intellectual-property-litigation/ (last visited Oct. 26, 2018) ("Rosemberg Law assists music artists and songwriters with filing copyright termination notices under the Copyright Act, and litigating to terminate assignments of copyright previously made to record companies and music publishers.").

- 1 -

for declaratory relief. Because Plaintiff's Termination Notice fails to comply with the requirements for recording termination notices established by regulations promulgated by the Copyright Office, the Termination Notice is invalid, and Plaintiff's demand for declaratory relief, along with his related claims for copyright infringement and an accounting, must be dismissed.

## II.     STATEMENT OF LEGAL BACKGROUND AND FACTS

### A.  TERMINATION OF COPYRIGHT GRANTS.

The Copyright Act of 1976 introduced the concept of termination of copyright grants, which enables an author or his or her successors to recapture previously granted rights during certain windows of time. *See* 17 U.S.C. §§ 203, 304(c)–(d). The Copyright Act created two separate termination regimes. The applicability of each depends on two factors: (1) when the grant was "executed" and (2) when the underlying work was created.

One such regime—governed by Section 304 of the Act—sets forth a process for terminating grants of renewal rights that were executed prior to 1978 for works that were copyrighted as of January 1, 1978. *See id.* § 304(c)–(d). Generally, such grants may be terminated during a five-year window that opens 56 years after the date on which the copyright in the work was secured. *See id.* § 304(c)(3).

The other regime—governed by Section 203 of the Act—addresses termination of grants of rights that were executed in or after 1978, irrespective of when the work in question was copyrighted. *See id.* § 203. Such grants may be terminated during a five-year window beginning 35 years after the grant was executed or, where the grant in question covers publication rights, termination may be effected during a five-year window that begins the earlier of (1) 35 years after the date of publication or (2) 40 years after the date of execution. *Id.* § 203(a)(3).

Importantly, however, not every agreement relating to copyright ownership is a "grant" potentially subject to termination. The Copyright Act recognizes a category of "works made for hire" that are either created by an employee within the scope of his or her employment or, in some circumstances, by an independent contractor and agreed to be a work made for hire. *Id*. § 101 (definition of work made for hire). In such circumstances, the employer or commissioning party "is considered the author" and is the initial copyright owner of the work unless the parties agree otherwise. *Id*. § 201(b). Thus, an individual contributing to a work made for hire is not considered an author of the work for purposes of the Copyright Act, and such a person has no copyright rights to grant to the employer or commissioning party. Consistent with that principle, both Sections 203 and 304 confirm that they do not apply to works made for hire. *Id*. §§ 203(a), 304(c), 304(d).

When there was, in fact, a grant, the same basic process applies for effecting termination regardless of which regime governs. Specifically, a termination notice must be served upon the grantee or its successor in title and must specify an effective date that falls within the relevant five-year window. *Id.* §§ 203(a)(4), 304(c)(4). This notice must be served at least two years, and no more than ten years, prior to the effective date listed in the termination notice. *Id.* §§ 203(a)(4)(A), 304(c)(4)(A). In order to take effect, the termination notice must be recorded with the Copyright Office prior to the effective date. *Id.* §§ 203(a)(4)(A), 304(c)(4)(A). Importantly, and particularly relevant here, the termination notice must "comply, in form, content, and manner of service, with requirements that the Register of Copyrights shall prescribe by regulation." *Id.* §§ 203(a)(4)(B), 304(c)(4)(B). These requirements specify, in detail, what

form the termination notice must take and what content it must include in order to be effective. *See* 37 C.F.R. § 201.10.[2]

While the termination provisions of the Copyright Act were intended to address the perception that some authors did not have sufficient bargaining power to obtain favorable economic terms when entering into grants with publishers, they were also intended to "reflect[] a practical compromise that will further the objectives of copyright law while recognizing the problems and legitimate needs of *all* interests involved." *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 173 n.39 (1985) (quoting H.R. Rep. No. 94-1476, at 124 (1976)) (emphasis added). As such, the termination provisions include a number of built-in protections for grantees, such as the ability to continue to exploit preexisting derivative works notwithstanding a termination, *see* 17 U.S.C. §§ 203(b)(1), 304(c)(6)(A); the specific and narrow windows during which termination may be effected, *see id.* §§ 203(a)(3), 304(c)(3), 304(d)(2); and the detailed requirements for preparing and serving a valid notice. *See id.* §§ 203(a)(4), 304(c)(4); *see also* 37 C.F.R. § 201.10.

## B. "GAP WORKS" AND "GAP GRANTS."

At all relevant times, it has been fairly common for authors to grant rights in works that they have not yet created. For example, a novelist may sign a contract with a publishing house concerning the right to publish a novel before that novel is actually written, or a songwriter may enter into an agreement with a music publishing company entitling the company to ownership of

---

[2] The Copyright Office has revised this regulation twice since the date of Plaintiff's Termination Notice. *See* Modernizing Copyright Recordation, 82 Fed. Reg. 52,213 (Nov. 13, 2017); Copyright Office Technical Amendments, 82 Fed. Reg. 9,354 (Feb. 6, 2017). Those revisions did not affect the substance of the regulation as is relevant to this motion, but they did renumber various provisions of the regulation. Citations in this brief to specific provisions of the regulation are generally to the 2015 version in effect at the time Plaintiff sent the Termination Notice.

the copyrights in songs written over a certain future period in exchange for present monetary consideration. This practice created issues for the two-regime system contained in the 1976 Act. Specifically, as was recognized years ago, there are a number of grants that were entered into prior to 1978 covering works that were not created until 1978 or later. The Copyright Office has referred to such grants that straddle the two regimes as "gap grants" and to such works as "gap works." *See* Gap in Termination Provisions, 76 Fed. Reg. 32,316, 32,320 (June 6, 2011).[3]

On its face, gap grants are not terminable under the Copyright Act, since pre-1978 agreements concerning works that were not created until 1978 or later do not fit into the Section 304 regime (for pre-1978 grants related to pre-1978 works) or the Section 203 regime (for grants executed in 1978 or later). In adopting its regulations concerning termination notices, the Copyright Office attempted to defer this issue for future resolution by Congress or the courts by adopting a nonintuitive definition of the term "the date of execution of the grant," contained in Section 203(a)(3). Instead of the usual meaning of that phrase as the date on which a written contract transferring the author's rights to another party was signed, the Copyright Office defined "the date of execution of the grant" as a date no earlier than when the work was created. *See* U.S. Copyright Office, Analysis of Gap Grants under the Termination Provisions of Title 17, at iii, 1 (Dec. 7, 2010), https://www.copyright.gov/reports/gap-grant-analysis.pdf ("Copyright Office Analysis").[4]

---

[3] For purposes of this brief, we use the Office's nomenclature. However, that nomenclature is inconsistent with the Office's analysis of such grants, which concluded that there is probably not any gap in coverage between the two termination regimes.

[4] In various places, the Copyright Act uses the word "executed" in ways that suggest Congress meant it to mean "signed." *See, e.g.*, 17 U.S.C. § 111(e)(1)(D) ("executes an affidavit"); *id.* § 204(b) ("transfer executed in" United States or a foreign country); *id.* § 205(a) ("actual signature of the person who executed it"); *id.* § 406(a)(2) (correcting error in copyright notice

This sleight of hand allows the Office to provisionally permit recordation of termination notices for gap grants under Section 203.  *See* 37 C.F.R. § 201.10(f)(5) (2015); *see also* 37 C.F.R. § 201.10(f)(1)(ii)(C) (2018).  Critically, such recordation is contingent upon the termination notice "recit[ing], as the date of execution, the date on which the work was created."  *See* 37 C.F.R. § 201.10(f)(5) (2015); *see also* 37 C.F.R. § 201.10(f)(1)(ii)(C) (2018).

The Copyright Office has not definitively opined that gap grants may be terminated pursuant to Section 203.  While making the provisional finding that gap grants are terminable under Section 203, Copyright Office Analysis at 7, the Office also admitted that "the applicability of section 203 is confusing," *id.* at ii, and "that it would be beneficial for Congress to clarify the statute."  *Id.* at iii.  Further, recognizing how far it had stretched to avoid the usual meaning of the term "executed," the Copyright Office has emphasized that such recordation "is without prejudice to how a court might ultimately rule on whether any particular document qualifies as a notice of termination within the scope of section 203" and that disputes concerning the validity of such notices should be settled by the courts or Congress.  *See* Gap in Termination Provisions, 76 Fed. Reg. 32,316, 32,320 (June 6, 2011).  Indeed, the Copyright Office's decision to record a termination notice never reflects a determination that the notice is legally sufficient.  *See* 37 C.F.R. § 201.10(f)(6) (2015); *see also* 37 C.F.R. § 201.10(f)(4) (2018).  Though the Copyright Office urged Congress to clarify the statute nearly eight years ago, Congress so far has elected not to create an express termination right for gap works.

## C.  THIS LAWSUIT.

Over 40 years ago, a production company called Zembu Productions, Inc. ("Zembu") hired Plaintiff to perform personal services as a recording artist on an exclusive basis pursuant to

---

with "document executed by the person named in the notice"); *id.* § 512(h)(4) (subpoena to issue if "declaration is properly executed").

an agreement dated June 24, 1977 (the "1977 Agreement"). Am. Compl. §§ 12–13; *see also* Decl. of Andrew H. Bart in Supp. of Def. Sony Music Entm't's Mot. to Dismiss the Am. Compl. ("Bart Decl."), ¶ 2, Ex. A. That agreement described a work-made-for-hire arrangement in which Zembu or its designee would be the author and initial copyright owner of recordings featuring Plaintiff's performances. *Id.* These sound recordings included "Kiss the World Goodbye," "In Search of the Rainbow Seekers," and "Juicy Fruit: pt. 2 (reprise); Juicy Fruit" (the "Sound Recordings").[5] Am. Compl. ¶¶ 15, 16, 19, 22. According to Plaintiff's Amended Complaint, the Sound Recordings were created at unspecified times between 1978 and 1983, *id.* ¶ 1, thus rendering them gap works.

Zembu assigned the 1977 Agreement to CBS Records, Inc. ("CBS") on August 27, 1979. *Id.* ¶ 18. CBS subsequently was acquired by Sony, thus making Sony the successor-in-interest to Zembu as copyright owner of the Sound Recordings and party to the 1977 Agreement. *Id.* ¶ 26.

Plaintiff's counsel served the Termination Notice on Sony on or about July 6, 2015. *Id.* ¶ 27. The notice purported to terminate Sony's rights under the 1977 Agreement to the three Sound Recordings pursuant to Section 203. *Id.* ¶ 27, Ex. A. While the Termination Notice identified distinct dates of *publication* for each of the Sound Recordings (*i.e.*, dates when the sound recordings were first distributed publicly), which ranged from May 19, 1978 to February 15, 1983, the notice represented that the alleged grants as to all three Sound Recordings shared a single "date of execution"—August 27, 1979. *Id.* As described further below, that "execution date" was demonstrably not the creation date of the Sound Recordings, as required by the Copyright Office's regulations. When Sony disputed the validity of Termination Notice, *see id.*

---

[5] The Termination Notice lists these Sound Recordings as "Titles of Sound Recordings under the grant of rights." Am. Compl., Ex. A. Thus, the Termination Notice does not apply to any other sound recordings of performances by the band of which Plaintiff was a member.

at Exs. B–D, Plaintiff sued Sony, seeking declaratory relief and an accounting.  *See* Compl., Dkt. No. 1.  Plaintiff subsequently amended his Complaint to add three claims of copyright infringement, one for each of the Sound Recordings listed in the Termination Notice.  *See* Am. Compl.

### III.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this standard, a plaintiff must plead factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The Court may properly consider "the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Though all reasonable inferences are drawn in the plaintiff's favor on a motion to dismiss on the pleadings, the Court need not accept as true "conclusions of law or unwarranted deductions of fact."  *See, e.g.*, *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174–75 (2d Cir. 2005) (internal quotation omitted).

### IV.   ARGUMENT

#### A. PLAINTIFF IS NOT ENTITLED TO DECLARATORY RELIEF BECAUSE HIS TERMINATION NOTICE IS INVALID.

In his Amended Complaint, Plaintiff requests a declaration, in essence, that the Termination Notice is valid and that he is the copyright owner of the Sound Recordings as of the effective dates in the Termination Notice.  *See* Am. Compl. ¶¶ 34–40.  Plaintiff's request for declaratory relief must be dismissed for one simple reason: The Termination Notice fails to

comply with the regulations promulgated by the Copyright Office.[6] It is thus invalid and cannot confer on Plaintiff copyright ownership of the Sound Recordings.

As discussed above, in enacting Section 203, Congress directed that a termination notice must comply with the regulations promulgated by the Copyright Office. *See* 17 U.S.C. § 203(a)(4)(B). These regulations provide detailed and clear instructions for the proper form of a termination notice and the content the notice must include in order to be deemed valid. *See* 37 C.F.R. § 201.10. With respect to grants in general, the regulations require that Section 203 termination notices *must* include "[t]he date of execution of the grant being terminated and, if the grant covered the right of publication of a work, the date of publication of the work under the grant." *Id.* § 201.10(b)(2)(iii) (2015). Importantly, this requirement is modified with respect to gap grants: Termination notices for gap grants *must* "recite[], as the date of execution, the date on which the work was created." *Id.* § 201.10(f)(5) (2015). This is the *only* requirement specific to termination notices for gap grants.

Identifying the date of creation as the date of execution in the case of a gap grant was essential to the Copyright Office's unilateral decision to transform what would otherwise be a pre-1978 grant into a grant entered into in 1978 or later. *See* Copyright Office Analysis at 1–5. While the usual meaning of the term "executed" is "signed" or "entered into," the Copyright

---

[6] Sony believes that the Termination Notice is invalid for a number of additional reasons as to which some discovery would be appropriate. First, Sony believes that there was not actually any grant here at all, because the Sound Recordings were works made for hire and there is thus no grant to terminate. *See* 17 U.S.C. § 203(a). Second, even if a grant was made by the 1977 Agreement, Sony believes that it is not terminable under Section 203, because any such grant was executed before 1978 as Section 203 is properly interpreted. However, it is not necessary to reach these issues because the Termination Notice is invalid on its face, since it fails to comply with the regulations promulgated by the Copyright Office. For that reason alone, Plaintiff's request for declaratory relief must be dismissed without need for resolution of the other more factually complex issues.

Office declared that for purposes of recording termination notices, and pending review by Congress or the courts, the term "executed" means the time when a grant is "performed" or "concluded." *Id.* at 2. The Copyright Office made this provisional determination in order to reach the conclusion that a grant of rights to a gap work cannot be performed and is not concluded until the work is created. *Id*. Thus, the Copyright Office's theory of why a pre-1978 agreement nonetheless might contain a grant terminable under Section 203—which, again, only pertains to grants entered into in 1978 or later—*depends* on the notice reciting as the date of execution of the grant a date of creation in 1978 or later.

To be sure, the commentary of the Register of Copyrights on the regulations recognizes that some of the information required by the regulations is more important than other required information. For example, the commentary contrasts information, such as the registration number, which is "intended to serve only as a means of possible assistance to persons receiving a notice of termination in identifying the work to which the notice applies," with "substantive condition[s] of termination" that "directly affect such matters as the adequacy of service or execution of the notice, or the *time periods within which service may be made or termination effected*." Termination of Transfers and Licenses Covering Extended Renewal Term, 42 Fed. Reg. 45,916, 45,917 (Sept. 13, 1977) (emphasis added).

In the case of a gap grant, proper identification of the date of creation as the date of execution is plainly a substantive and material condition of termination, because the only theory under which an author could possibly terminate a grant made in a pre-1978 agreement under Section 203 depends on the author establishing that the date of execution of the grant was a date of creation in 1978 or later. The date of creation/execution is also important because it is necessary to identify the window for possible termination, which is measured from either the

date of execution or the date of publication, depending on the circumstances. 17 U.S.C. § 203(a)(3). Without knowing the date of creation/execution, it is impossible to discern whether service of the termination notice and the effective date specified therein are timely, or whether Section 203 applies at all.[7] And an incorrect date of creation/execution could lead to an erroneous date for recapture of the copyright rights. Accordingly, it is extremely important that an author seeking to terminate a gap grant comply with the requirement that the termination notice "recite[], as the date of execution, the date on which the work was created." 37 C.F.R. § 201.10(f)(5) (2015).

Here, Plaintiff and his counsel (an individual who purports to have expertise in this area) did not even attempt to meet this requirement—the fundamental requirement for treating a gap grant as subject to Section 203. Plaintiff's Termination Notice lists distinct dates of publication for each of the Sound Recordings, yet lists a single date of execution for all three Sound Recordings:

| Sound Recording | Date of Execution/Creation | Date of Publication |
|---|---|---|
| "Kiss the World Goodbye" | August 27, 1979 | May 19, 1978 |
| "In Search of the Rainbow Seekers" | August 27, 1979 | September 12, 1980 |
| "Juicy Fruit, Pt 2 (reprise), Juicy Fruit" | August 27, 1979 | February 15, 1983 |

Am. Compl., Ex. A.

---

[7] If the Mtume band created the Sound Recordings at issue here before 1978, there is no basis for termination under Section 203, even under the Copyright Office's interpretation of the term "executed."

However, August 27, 1979 plainly was not the date of creation of any of the three Sound Recordings. Indeed, Plaintiff admits that August 27, 1979 is not the date of creation for all three Sound Recordings in the Amended Complaint. *Id.* ¶ 1 (stating that Sound Recordings were "created between 1978 and early 1983"). Plaintiff—who claims to be the sole author of the Sound Recordings, *id.*—clearly knew that when he sent the Termination Notice. The only relevance of the August 27, 1979 date is that it was the date when Zembu assigned the 1977 Agreement to CBS. *Id.* at Ex. A; *see also id.* ¶ 18. The date of the assignment of the 1977 Agreement to CBS has nothing to do with the creation of the Sound Recordings in question. Indeed, this manifest and material error in the Termination Notice is highlighted by the fact that it represents that "Kiss the World Goodbye" was published nearly a year *before* the date it was purportedly created. *Id.* at Ex. A. This is impossible; one cannot publish a work that does not yet exist.

Plaintiff clearly made no effort to satisfy the fundamental requirement that the termination notice "recite[], as the date of execution, the date on which the work was created." 37 C.F.R. § 201.10(f)(5) (2015). Instead, Plaintiff arbitrarily selected the date of assignment of the 1977 Agreement as a placeholder, and incorrectly set forth that date as the "date of execution of the grant." *See* Am. Compl., Ex. A. This violates not only the requirement that the date of execution of the grant be accurate, but even more importantly, violates the only specific requirement for valid termination notices for gap grants.[8] Because Plaintiff failed to comply with the regulations, the Termination Notice is invalid and ineffective. *See Burroughs v. Metro-*

---

[8] Plaintiff is clearly aware of this requirement and capable of meeting it, since Plaintiff recently served a termination notice on Sony related to other sound recordings subject to the 1977 Agreement and identified a purported date of creation in that notice. Bart Decl. ¶ 3.

*Goldwyn-Mayer, Inc.*, 683 F.2d 610, 622 (2d Cir. 1982).  Plaintiff's request for declaratory relief must be dismissed.[9]

### B.  PLAINTIFF'S REMAINING CLAIMS MUST ALSO BE DISMISSED.

Plaintiff also alleges that Sony is liable for (1) copyright infringement for each of the Sound Recordings, *see* Am. Compl. ¶¶ 48–65, and (2) an accounting, *see id.* ¶¶ 41–47, by virtue of Sony's continued exploitation of the Sound Recordings following the effective dates in the Termination Notice.  These claims must also be dismissed as a matter of law.

#### 1.  Plaintiff Lacks the Ownership Interest Necessary to State a Claim for Copyright Infringement.

Plaintiff claims that he is the owner of the Sound Recordings as of the effective dates listed in the Termination Notice and that Sony willfully has distributed the Sound Recordings without Plaintiff's authorization, thus constituting copyright infringement.  *Id.* ¶¶ 48–65. Plaintiff cannot state a claim for copyright infringement.  For the reasons stated above, *see supra* Part IV.A, the Termination Notice is invalid.  Accordingly, Plaintiff is not the owner of the copyrights in the Sound Recordings and does not possess any of the exclusive rights in those Sound Recordings.  Any claim alleging infringement of a copyright interest Plaintiff does not

---

[9] In addition to seeking a declaration that the Termination Notice is valid and that Plaintiff is thus the copyright owner of the Sound Recordings in question, Plaintiff also seeks a declaration that two other potential bases for the invalidity of the Termination Notice do not apply.  Specifically, he seeks a declaration (1) that the 1977 Agreement actually makes a grant, because it was not a work-made-for-hire agreement, and (2) assuming that the 1977 Agreement did not provide for a work-made-for-hire arrangement, that the grant in the 1977 Agreement is subject to termination pursuant to Section 203, notwithstanding the fact that it is a gap grant.  *See* Am. Compl. ¶¶ 37, 39.  Those questions are more complicated, and may depend to some extent on facts that are not stated in the Amended Complaint, and that would require discovery to understand better. Fortunately, it is not necessary to reach those questions, because the Termination Notice is invalid due to its failure to comply with the regulations.  In the absence of a valid notice, a determination concerning these issues does not present an actual controversy and will not affect the legal interests of the parties.  *See Velvet Underground v. Andy Warhol Found. for the Visual Arts, Inc.*, 890 F. Supp. 2d 398, 405–06 (S.D.N.Y. 2012).

possess must be dismissed.  *See* 17 U.S.C. § 501(b); *see also Creazioni Artistiche Musicali, S.R.L. v. Carlin Am., Inc.*, No. 17-266-cv, 2018 WL 4037292, at *1 (2d Cir. Aug. 23, 2018).

### 2. Plaintiff Is Not Entitled to an Accounting.

Plaintiff also claims that Sony "has not properly accounted to Mtume for income earned on the sound recordings at issue post-termination" and "must account to Mtume for all income derived from exploitation of the sound recordings at issue from and after the effective dates of termination." Am. Compl. ¶¶ 45–46.  As discussed above, *see supra* Part IV.A, the Termination Notice is invalid, so Sony does not have a duty to account to Plaintiff for income derived after the effective dates listed in the Termination Notice.

Additionally, in order to state a claim for an accounting under New York law, Plaintiff must prove that he was a beneficiary of a fiduciary duty owed by Sony.  *See Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 120 (2d Cir. 2018).  The relationship between a recording artist and a record company is not "the type of fiduciary or confidential relationship which may create a right to an equitable accounting."  *See Poley v. Sony Music Entm't, Inc.*, 619 N.Y.S.2d 923, 926 (Sup. Ct. 1994), *aff'd*, 222 A.D.2d 308 (1995); *see also Rodgers v. Roulette Records, Inc.*, 677 F. Supp. 731, 738–39 (S.D.N.Y. 1988); *Caldwell v. ABKCO Music & Records, Inc.*, 703 N.Y.S.2d 97, 98 (App. Div. 2000).  For this additional reason, Plaintiff's claim for an accounting must be dismissed.

### V. CONCLUSION

For all the foregoing reasons, the Court should dismiss with prejudice all of Plaintiff's claims.

| | |
|---|---|
| Dated: October 26, 2018 | JENNER & BLOCK LLP |

                                            By:  /s/ Andrew H. Bart  
                                                     Andrew H. Bart  
                                                     919 Third Avenue, 38th Floor  
                                                   New York, New York 10022  
                                                   Telephone: (212) 891-1600  
                                                   Facsimile: (212) 891-1699  
                                                   *Counsel for Defendant Sony Music Entertainment*