UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES MTUME,

        Plaintiff,

   - against -

SONY MUSIC ENTERTAIMENT,

        Defendant.

**OPINION AND ORDER**

18 Civ. 6037(ER)

Ramos, D.J.:

  James Mtume ("Mtume") brings this action against Sony Music Entertainment ("Sony") for declaratory judgment, copyright infringement, and accounting. Pending before the Court is Sony's motion to dismiss all claims. Doc. 22. For the reasons discussed below, the motion is DENIED.

## I. BACKGROUND

### A. Mtume's Complaint

  Mtume is "an award-winning musician, songwriter, activist, and radio personality." Am. Compl. ¶ 7. His dispute with Sony involves two long playing ("LP") records and one single record album that he created while he was under contract with Zembu Productions, Inc. ("Zembu"). *Id.* ¶¶ 12, 15. Mtume first entered into a recording contract with Zembu on June 24, 1977 (the "1977 Agreement"). *Id.* at ¶ 12. According to Mtume, this was not a work for hire agreement. *Id.*

  As per the 1977 Agreement, Mtume agreed to render his services exclusively to Zembu and to deliver up to two LP records per contract year. *Id.* ¶ 13; 1977 Agreement ¶¶ 2–3. Under the 1977 Agreement, Zembu owned all copyright rights to master recordings made during the

term of the Agreement.[1]  Am. Compl. ¶ 14.  The agreement further stated that "[i]n the event that [Zembu] shall enter into an agreement with CBS Records ["CBS"], or any affiliate thereof, to supply the services of [Mtume] to such entity pursuant to this agreement, CBS . . . or its designee shall be deemed a third party beneficiary."  1977 Agreement ¶ 4(e).  Neither the parties' briefs nor the 1977 Agreement explain the precise nature of the relationship between Zembu and CBS at the time the contract was signed.  On August 27, 1979, Zembu assigned the 1977 Agreement to CBS.  Am. Compl. ¶ 18.

There are three works at issue in this litigation:  (1) *Kiss this world goodbye*, Mtume's first LP album, which was released in the United States in May 1978 and to which either CBS or Zembu secured copyright registration on July 14, 1978; (2) *In search of the rainbow seekers*, his second LP album, which was released in 1980 and to which CBS secured a copyright registration on November 6, 1980; and (3) "Juicy Fruit: pt. 2 (reprise); Juicy Fruit" ("Juicy Fruit"), a single-song recording, which was recorded and released in early 1983 and to which CBS secured copyright registration on May 23, 1980 [*sic*].  *Id.* ¶¶ 16–17, 19–24.  Mtume concedes that because the 1977 Agreement had been assigned to CBS in August 1979, the ownership and all rights of copyright to the two works that post-dated the transfer—i.e. *In search of the rainbow seekers* and "Juicy Fruit"—were granted to CBS.  *Id.* ¶¶ 20, 23.

Mtume and CBS entered into a new agreement in October 1983.  *Id.* ¶ 25.  That agreement terminated the 1977 Agreement, but the rights granted under the 1977 Agreement remained intact.  *Id.*  In 1987, Sony acquired CBS, making Sony the successor in interest to the 1977 Agreement and the copyright interests created under that agreement.  *Id.* ¶ 26.

---

[1] The agreement had an initial term of one year but was extendable.  1977 Agreement ¶ 2.

On July 9, 2015, Mtume sent a termination notice to Sony (the "Termination Notice") regarding the three works, with termination effective dates ranging from July 6, 2017 (for *Kiss the world goodbye*) to April 23, 2018 (for "Juicy Fruit"). *Id.* ¶¶ 27–28. Among other information, the Termination Notice listed the dates of publication for the three Sound Recordings as May 19, 1978 for *Kiss this world goodbye*; September 12, 1980 for "In search of the rainbow seekers"; and February 15, 1983 for "Juicy Fruit." Doc. 11, Ex. A (Termination Notice) ¶ 3. It also listed the date of execution of all three recordings as August 27, 1979. *Id.* at ¶ 2. It further specified that:

> The grant to which this termination notification applies is described on the form used as an 'Agreement' dated June 24, 1977 by and between Zembu Productions, Inc. and Mtume (Artist). This agreement was subsequently assigned to CBS Records by agreement dated August 27, 1979 [CRU 79-454.1(a)(1)]. This termination applies to any and all grants or transfers of copyright and all rights of the copyright proprietor, including, without limitation, publication and recording rights to the sound recordings set forth herein.

*Id.* ¶ 7 (alteration in original).

Sony responded to the Termination Notice on July 21, 2017, over two years after it was sent and more than two weeks after the effective date of termination for "Kiss this world goodbye." Am. Compl. ¶ 29. Sony claimed that the Termination Notice did not comply with the requirements of the Copyright Act and that Mtume was therefore not entitled to the copyright for "Kiss this world goodbye." *Id.* Sony sent similar letters regarding the other two works, each just before the work's effective date of termination. *Id.* ¶¶ 30–31.

In its letters, Sony gave several reasons why it considered the Termination Notice ineffective. According to Mtume, these reasons include the following:

> (a) the recordings at issue are allegedly works made for hire; (b) the recordings at issue are not subject to termination pursuant to Section 203 because they were created pursuant to a grant contained in a 1977 agreement; (c) there may be additional potential authors other than Mtume whose grants were not noticed for

3

termination; and (d) the termination notice relating to the First and Second Albums purportedly seeks only to terminate the copyright in and to the compilation of tracks on the album, and not the individual sound recordings that appear on the albums.

*Id.* ¶ 32.

**B. Procedural History**

Mtume filed the instant action on July 3, 2018 for declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et. seq.*, and the Copyright Act, 17 U.S.C. § 203, as well as for common-law accounting. He amended the Complaint on August 23, 2018 to add three causes of action for copyright infringement.

On October 26, 2018, Sony moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 22. Sony argues that Mtume's termination notice was invalid, and that, therefore, he is not entitled to declaratory or any other kind of relief. In response, Mtume argues that granting Sony's motion to dismiss would be inappropriate because significant factual disputes remain.

The Court agrees with Mtume.

**II. LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re*

*Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

## III. DISCUSSION

Sony argues that the Termination Notice is invalid because Mtume failed to follow the specific instructions promulgated by the Copyright Office. Doc. 23. at 8–13. Specifically, Sony argues that Mtume failed to list the correct date of execution for the works as required by

statute.[2] Therefore, it follows that Mtume's remaining claims for accounting and copyright infringement must also be dismissed. *Id.* at 13–14. The Court disagrees.

### A. Requirements for Termination Notices

The Copyright Act provides two separate termination regimes. Section 304 describes a process for terminating grants of renewal rights that were executed prior to 1978 for works that were copyrighted and created as of January 1, 1978. 17 U.S.C. § 304. None of the sound recordings here fall within this definition. Section 203 sets forth a termination process for grants of rights that were executed in or after 1978, irrespective of when the work in question was copyrighted. 17 U.S.C. § 203.

There are a number of works, like Mtume's, that fit squarely into neither category because they were transferred and/or assigned by an agreement dated before January 1, 1978 but were not created until after this date. These are called "gap works." Similarly, the term "gap grants" refers to pre-1978 agreements that concern works that were not created until 1978 or later—like the 1977 Agreement. Because § 203 applies only to works with grants that were executed in or after 1978, gap works did not initially fit under § 203's framework. This changed in December 2010, when the Copyright Office stated that "[S]ection 203 is the relevant provision for Gap Grants." U.S. Copyright Office, *Analysis of Gap Grants under the Termination Provisions of Title 17*, p. i (2010), http://www.copyright.gov/reports/gap-grant-analysis.pdf. For purposes of this motion, the Court will analyze the dispute under § 203.

The Copyright Office has issued rules regarding the proper contents of a termination notice under § 203. *See* 37 C.F.R. § 201.10(b)(2). There is only one requirement at issue in this

---

[2] Sony has several other arguments for why the Termination Notice is invalid, including that the Sound Recordings were works made for hire; however, it concedes that "as to [these] some discovery would be appropriate." Doc. 23 at 9 n.6.

case: that the notice include "[t]he date of execution of the grant being terminated." *Id.* § 201.10(b)(2)(iii). Usually, the phrase "date of execution of the grant" means the date on which a written contract transferring the author's rights to another party was signed. However, the Copyright Office clarified that when applied to gap works, the phrase means "the date on which the work was created." *Id.* § 201.10(f)(1)(ii)(C). Sound recordings are created for purposes of the Copyright Act on the date they are "fixed," or recorded. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 808 F. Supp. 2d 634, 637 (S.D.N.Y. 2011) ("A 'sound recording' is a 'work that results from the fixation of a series of musical, spoken, or other sounds . . . .'" (internal citations omitted)); United States Copyright Office, *Copyright Registration for Sound Recordings* 6, https://www.copyright.gov/circs/circ56.pdf ("A sound recording is considered created when it is 'fixed' in a phonorecord for the first time."). To terminate grants under § 203, parties have five years from "'the end of thirty-five years from the date of execution of the grant,' but if the grant 'covers the right of publication of the work,' that five-year period begins the earlier of (1) thirty-five years from the work's publication or (2) forty years from the execution of the grant." *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 22 (2d Cir. 2015) (quoting 17 U.S.C. § 203).

### B. Mtume's Termination Notice

Mtume lists the date of execution for all three works as August 27, 1979, the date Zembu assigned the 1977 Agreement to CBS. Termination Notice ¶ 2; Am. Compl. ¶ 18. As discussed, the Copyright Office has indicated that the date of execution for gap works is considered the date of creation. 37 C.F.R. § 201.10(f)(1)(ii)(C). On the face of the Complaint, August 27, 1979 cannot be the date of creation for at least one of the works, as *Kiss this world goodbye* was released in May 1978. Am. Compl. ¶ 16. It is also at odds with Mtume's allegation that he

7

"recorded" "Juicy Fruit" in early 1983. *Id.* ¶ 22. However, it could feasibly be the date of creation for *In search of the rainbow seekers*, which the Termination Notice indicates was published on September 12, 1980. Termination Notice ¶ 3. More importantly, the Court finds that this date—to the extent it is incorrect—may be harmless error. More information is needed to determine if this is the case, making this inquiry unsuitable for a 12(b)(6) motion to dismiss.

Courts have found that alleged errors in publication dates provided in a termination notice raise factual issues. *See Stillwater Ltd. v. Basilotta,* No. 16 Civ. 1895 (FMO) (SHx), 2017 WL 2906056, at *4 (C.D. Cal. Mar. 17, 2017). Although the dispute here concerns execution rather than publication dates, the Court sees no reason to find that the need for further factual investigation should be any less. Mtume states in his Complaint that "he created [the works] between 1978 and early 1983." Am. Compl. ¶ 1. The August 27, 1979 date fits in that range. Looking at these facts in the light most favorable to Mtume requires the Court to find that this could plausibly be the date of publication for at least *In search of the rainbow seekers* and perhaps even "Juicy Fruit," if a previous recording existed before the 1983 version. At the very least, this inquiry requires further development of the facts.

Moreover, the August 27, 1979 date may be harmless error. Sony cites *Burroughs v. Goldwyn-Mayer, Inc.* for the proposition that the Termination Notice must be invalid and ineffective if Mtume failed to comply with the regulations. 683 F.2d 610, 622–23 (2d Cir. 1982). In that case, however, the Court did not consider whether the harmless error provision of the rules applied. Because the Court finds that harmless error may be appropriate here, it finds *Burroughs* to be inapposite.

The Copyright Office has recognized that authors of gap grants may encounter difficulties in establishing the date of execution based on the date of creation of a work. Thus,

under 37 C.F.R. § 201.10(e), an incorrect date in a termination notice need not always automatically invalidate it. Section 201.10(e)(1) provides that "[h]armless errors in a notice that do not materially affect the adequacy of the information required to serve the purposes of 17 U.S.C. § 203 . . . shall not render the notice invalid." Section 201.10(e)(2) provides examples of instances in which the error should be considered harmless, such as errors made in giving the registration number and the date of publication of the works. *Id.* § 201.10(e)(2). These examples are not meant to be exclusive. *Id.* (explaining that the list applies "[w]ithout prejudice to the general rule provided by paragraph (e)(1) of this section"). The Copyright Office further explained that, as long as the terminating party provides a date of execution that is "as accurate as the . . . party is able to ascertain," and "provided in good faith and without any intention to deceive, mislead or conceal relevant information," an incorrect date is a harmless error and § 203 should still provide a relief for terminating parties. Gap in Termination Provisions, 76 Fed. Reg. 32316, 32319 (June 6, 2011).

"[A]n error's 'materiality,' and hence its 'harmlessness,' [is] to be viewed through the prism of the information needed to adequately advance the purpose sought by the statutory termination provisions themselves." *Siegel v. Warner Bros. Entm't Inc.*, 690 F. Supp. 2d 1048, 1052 (C.D. Cal. 2009) [hereinafter *Siegel II*] (citing 37 C.F.R. § 201.10(e)(1)); *see also Horror Inc. v. Miller*, 335 F. Supp. 3d 273, 319 (D. Conn. 2018) (finding that putting incorrect addresses in the termination notice did not invalidate it); *Siegel v. Warner Bros. Entm't Inc.*, 658 F. Supp. 2d 1036, 1091–95 (C.D. Cal. 2009) [hereinafter *Siegel I*] (finding that Plaintiff's failure to include information about two weeks' worth of comics in the termination notice was harmless error given the volume of information that Plaintiff had provided). The Copyright Office has unambiguously explained that the purpose behind Sections 203 and 304 is to provide protections for authors of creative works. *Analysis of Gap Grants under the Termination Provisions of Title 17*,

at i. These sections exist to allow authors or their heirs a second opportunity to share in the economic success of their works. *Id.* One motivation behind the Sections is to counterbalance the unequal bargaining position of artists, resulting in part from the "impossibility of determining a work's value until it has been exploited." H.R. Rep. No. 94-1476, at 124 (1976). A "competing objective[]" of the sections is "for the existing assignee to receive reasonable notice of what rights of theirs are being affected through the exercise of the [artist]'s . . . termination right." *Seigel II*, 690 F. Supp. at 1055–56; *see also* 42 Fed. Reg. 45916, 45918 (stating that the regulation "attempts to avoid the imposition of costly or burdensome requirements while, at the same time, giving the grantee and the public a reasonable opportunity to identify the affected grant and work from the information given in the notice").

The Court requires more factual development to determine if harmless error would apply to this case. First, it requires more information to determine if Sony was on notice of which recordings were covered by the Termination Notice. Mtume's Termination Notice listed the names of the recordings, their dates of publication, their author, and their copyright registration numbers. Termination Notice ¶¶ 3–6. At this stage of the litigation and considering all facts in the light most favorable to Mtume, the Court finds it plausible that Sony was on notice as to which recordings were included in the Termination Notice.

The Court also requires more information to determine if a different date of execution would materially affect application of the termination provisions. Sony identifies two reasons why a correct date of execution is so important. First, it argues that "the only theory under which an author could possibly terminate a grant made in a pre-1978 agreement under Section 203 depends on the author establishing that the date of execution of the grant was a date of creation in 1978 or later." Doc. 23 at 10. Second, it argues that the date of execution "is necessary to identify the window for possible

termination, which is measured from either the date of execution or the date of publication." *Id.* at 10–11. Finally, Sony further alleges that this error was not committed in good faith.

Because the Court must assume this fact as true, it finds that Sony's first concern is misplaced, as there is no indication here that a grant was made pre-1978. Mtume alleges that he created all three recordings between 1978 and 1983. Am. Compl. ¶ 1. Section 203, then, undoubtedly applies for purposes of this motion. Moreover, the Court requires more information as to the actual dates of execution for these works in order to determine whether any of the effective dates of termination fall outside the acceptable timeframe. Even if the first recording was created on January 1, 1978, Mtume would have until January 1, 2018 to terminate the grant (forty years from the earliest date of execution). The first effective date of termination—July 6, 2017—appears to fall well within that range. Given the publication dates provided by Mtume, it is likely that this is true for all three recordings. *See* Termination Notice ¶ 3. However, the Court does not currently have enough information to say definitively whether this is the case. As to whether any mistake was made in good faith, this also requires a factual inquiry as to Mtume's objectives. While the Court is inclined to agree with Sony that "*some* effort at compliance must be required to invoke the harmless-error provision," the Court cannot find that Mtume has not met this bar for purposes of a 12(b)(6) motion to dismiss. Doc. 33 at 9. Given that the Termination Notice provided other identifying information for the three works, it may well be that Mtume misunderstood what was meant by the term "date of execution," if, in fact, that date is incorrect as to all three works. In other words, the Court finds no reason to infer bad faith from the instant complaint.

## IV. CONCLUSION

For the reasons set forth above, Sony's motion to dismiss is DENIED. The parties are directed to appear for a conference on October 24, 2019 at 10:00 AM. The Clerk of Court is respectfully directed to terminate the motion, Doc. 22.

SO ORDERED.

Dated: September 30, 2019
New York, New York

Edgardo Ramos, U.S.D.J.