**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAMES MTUME, | |
| *Plaintiff*, | |
| v. | Case No. 1:18-cv-06037-ER |
| SONY MUSIC ENTERTAINMENT, a Delaware partnership, | |
| *Defendant*. | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF**
**PLAINTIFF JAMES MTUME TO DISMISS DEFENDANT'S COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT .................................................................................1

II.  FACTUAL BACKGROUND ..................................................................................3

III. ARGUMENT ...........................................................................................................4

    A.   THIS COURT HAS JURISDICTION OVER SONY'S CLAIMS. .....................4

    B.   SONY HAS SUFFICIENTLY STATED A CLAIM WITH RESPECT
        TO ITS COUNTERCLAIMS. ...............................................................................8

        1.   Sony Sufficiently Pleaded Its Breach of Contract/Implied
            Covenant of Good Faith and Fair Dealing Claim. ...................................9

        2.   Sony Sufficiently Pleaded Its Unjust Enrichment Claim........................11

        3.   The Voluntary Payment Doctrine Does Not Bar Sony's Claims............13

        4.   Sony Sufficiently Stated a Claim for Relief under the
            Declaratory Judgment Act. ....................................................................14

    C.   DISMISSAL FOR FAILURE TO JOIN A PARTY IS NOT
        WARRANTED. .....................................................................................................15

IV.  CONCLUSION ......................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*105 Mt. Kisco Assocs. LLC v. Carozza*,
No. 15 CIV. 5346 (NSR), 2019 WL 6998008 (S.D.N.Y. Dec. 20, 2019) ..............................11

*Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*,
795 F.3d 351 (2d Cir. 2015)....................................................................................................15

*Ashley v. Am. Airlines, Inc.*,
738 F. Supp. 783 (S.D.N.Y. 1990).........................................................................................16

*Barnet v. Drawbridge Special Opportunities Fund LP*,
No. 14-CV-1376 PKC, 2014 WL 4393320 (S.D.N.Y. Sept. 5, 2014)....................................12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................................8

*Blackrock Balanced Capital Portfolio v. HSBC Bank USA, Nat. Ass'n*,
95 F. Supp. 3d 703 (S.D.N.Y. 2015)......................................................................................5, 8

*Burton v. Label, LLC*,
344 F. Supp. 3d 680 (S.D.N.Y. 2018).......................................................................................6

*Chaluisan v. Simsmetal E. LLC*,
698 F. Supp. 2d 397 (S.D.N.Y. 2010).......................................................................................6

*Cobalt Multifamily Inv'rs I, LLC v. Bridge Capital (USVI), LLC*,
No. 06 CIV. 5738 KMW MHD, 2007 WL 2584926 (S.D.N.Y. Sept. 7, 2007) .....................14

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013).......................................................................................................8

*Cruz v. TD Bank, N.A.*,
742 F.3d 520 (2d Cir. 2013)...............................................................................................10, 17

*Eidelman v. Sun Prod. Corp.*,
No. 16-CV-3914 (NSR), 2017 WL 4277187 (S.D.N.Y. Sept. 25, 2017) ...............................12

*EMR (USA Holdings), Inc. v. Goldberg*,
No. 18 CIV. 07849 (ER), 2019 WL 5537878 (S.D.N.Y. Oct. 25, 2019) ...............................15

*Essex Capital Corp. v. Garipalli*,
No. 17 CIV. 6347 (JFK), 2018 WL 6618388 (S.D.N.Y. Dec. 18, 2018) ...............................12

*Fantozzi v. Axsys Techs., Inc.*,
    No. 07 CIV. 02667 (LMM), 2008 WL 4866054 (S.D.N.Y. Nov. 6, 2008)......................10, 11

*Farina v. Metro. Transp. Auth.*,
    No. 18-CV-1433 (PKC), 2019 WL 3966163 (S.D.N.Y. Aug. 21, 2019) ...............................13

*Fed. Ins. Co. v. SafeNet, Inc.*,
    758 F. Supp. 2d 251 (S.D.N.Y. 2010).......................................................................................16

*Franze v. Bimbo Foods Bakeries Distribution, LLC*,
    No. 717CV03556NSRJCM, 2019 WL 1244293 (S.D.N.Y. Mar. 15, 2019) ..........................14

*Garner v. Behrman Bros. IV, LLC*,
    260 F. Supp. 3d 369 (S.D.N.Y. 2017).......................................................................................15

*Garson v. Garson*,
    No. 16 CIV. 6167 (KPF), 2017 WL 2915386 (S.D.N.Y. July 6, 2017) ................................12

*Hongxia Wang v. Enlander*,
    No. 17 CIV. 4932 (LGS), 2018 WL 1276854 (S.D.N.Y. Mar. 6, 2018) ................................12

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
    679 F. Supp. 2d 395 (S.D.N.Y. 2009).......................................................................................10

*Klein* v. *London Star, Ltd.*,
    26 F. Supp. 2d 689 (S.D.N.Y. 1998)...........................................................................................7

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
    102 F.3d 660 (2d Cir. 1996).......................................................................................................12

*Nixon v. TWC Admin. LLC*,
    No. 16-CY-6456 (AJN), 2017 WL 4712420 (S.D.N.Y. Sept. 27, 2017)...................................5

*Oliver Wyman, Inc. v. Eielson*,
    No. 15 CIV. 5305 (RJS), 2016 WL 5339549 (S.D.N.Y. Sept. 22, 2016)................................10

*Orange Cty. Choppers, Inc. v. Olaes Enters., Inc.*,
    497 F. Supp. 2d 541 (S.D.N.Y. 2007).......................................................................................11

*RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*,
    No. 10 CIV.24 PGG, 2011 WL 3251554 (S.D.N.Y. July 28, 2011) .......................................14

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)...........................................................................................................8

*Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*,
    109 F. Supp. 3d 587 (S.D.N.Y. 2015).........................................................................................9

iv

*Sec. & Exch. Comm'n v. Curshen*,
  No. 08 CIV. 7893 (PGG), 2014 WL 12791876 (S.D.N.Y. Mar. 21, 2014)............................15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011)....................................................................................................5, 7

*Spiro v. Healthport Techs., LLC*,
  73 F. Supp. 3d 259 (S.D.N.Y. 2014).........................................................................................13

*Turner Network Sales, Inc. v. DISH Network LLC*,
  No. 17-CV-7599 (RA), 2019 WL 4735402 (S.D.N.Y. Sept. 27, 2019) ...................................14

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
  No. 18 CIV. 4044 (VM), 2019 WL 4744220 (S.D.N.Y. Aug. 26, 2019) ...................................5

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966).....................................................................................................................5

*Wurtz v. Rawlings Co., LLC*,
  No. 12CV1182JMAAKT, 2016 WL 7174674 (E.D.N.Y. Nov. 17, 2016).............................13

**STATUTES**

17 U.S.C. § 115...................................................................................................................................4

28 U.S.C. § 1367............................................................................................................................5, 7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12........................................................................................................... passim

Fed. R. Civ. P. 15..................................................................................................................10, 17

Sony Music Entertainment ("Sony") respectfully submits this Memorandum in opposition to the Motion to Dismiss Defendant's Counterclaims, Dkt. No. 50 (the "Motion" or "Motion to Dismiss") of Plaintiff James Mtume ("Plaintiff").

## I.   PRELIMINARY STATEMENT

In its Answer, Sony has asserted counterclaims arising from Plaintiff's wrongful retention of overpayments of royalties over the past several years.  In response, Plaintiff has filed a motion asserting a jumbled assortment of arguments for dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of jurisdiction, Rule 12(b)(6) for failure to state a claim, and Rule 12(b)(7) for failure to join a party—none of which have any merit.

Plaintiff's primary argument is that this Court lacks supplemental jurisdiction over Sony's counterclaims or, alternatively, that this Court should decline to exercise supplemental jurisdiction over the counterclaims.  However, it is clear that both Plaintiff's claims and Sony's counterclaims arise from a common nucleus of operative facts that justify the exercise of supplemental jurisdiction.  Specifically, all claims in this action derive from a core of facts pertaining to the contractual relationship of the parties, sound recordings created pursuant to one of those contracts, and Plaintiff's entitlement to royalties under those contracts.

Alternatively, Plaintiff argues that this Court should decline to exercise supplemental jurisdiction because Sony's counterclaims would allegedly predominate over Plaintiff's claims. However, this argument is frivolous, in that the counterclaims are straightforward royalty accounting claims while Plaintiff's claims are broader, more factually complex, and even involve at least one significant legal issue of first impression.  Accordingly, it is clear that this Court has supplemental jurisdiction over Sony's counterclaims, and should exercise it, in the interests of judicial economy, to resolve all open issues between the parties in one proceeding.

Evidently recognizing the weakness of his jurisdictional challenges, Plaintiff next seeks dismissal on the ground that Sony has failed to state a claim pursuant to Rule 12(b)(6)—even though he did not identify this basis for dismissal in either his pre-motion conference letter or at the pre-motion conference itself.  Further, while Plaintiff lobs a number of new arguments at the wall, none of them stick.  First, Plaintiff argues that Sony's breach of contract claim is flawed due to a purported failure to identify the relevant contractual provisions.  However, Sony has sufficiently identified the contractual provisions at issue.  Second, Plaintiff argues that Sony has failed to afford Plaintiff an "opportunity to cure" the breach.  However, the notion that Plaintiff would agree that there was a breach or would cure that breach if given an opportunity is farcical. Plaintiff could dispose of Sony's counterclaims now by simply returning the overpayments. Third, Plaintiff asserts that Sony's unjust enrichment claim must be dismissed as duplicative of Sony's breach of contract claim.  However, Sony is permitted to plead its unjust enrichment claim in the alternative.  Fourth, Plaintiff argues that the statute of limitations for Sony's unjust enrichment claim should be limited to three years.  Not only is this assertion an erroneous statement of the law but, in any event, it does not warrant dismissal.  Fifth, Plaintiff argues that the alleged "voluntary payment doctrine" bars Sony's claims for breach of contract and unjust enrichment.  However, this argument is premature since the subject requires further factual development, and is thus unsuitable for resolution on a motion to dismiss.  Finally, Plaintiff claims that Sony's request for declaratory relief should be dismissed as duplicative of its other counterclaims, but this ignores the fact that the requested declaration serves a wholly different purpose than the other counterclaims.

Finally, Plaintiff asserts that Sony's breach of contract counterclaim should be dismissed for failure to join a required party under Rule 12(b)(7).  However, Plaintiff has made no effort to

sustain his burden of demonstrating that the absent party must be joined.  Indeed, it is evident that this absent party has no interest in the subject matter of the breach of contract counterclaim, and in fact, the absent party is a corporation that public records show has not been active for years—a fact that Plaintiff is plainly aware of.

Sony thus respectfully requests that Plaintiff's Motion be denied in its entirety.

## II.      FACTUAL BACKGROUND

On or about June 24, 1977, Plaintiff was engaged by Zembu Productions, Inc. ("Zembu") to provide his services as a recording artist (the "1977 Agreement").  Answer & Countercls. of Def. Sony Music Entm't to Am. Compl. ("Answer"), Dkt. No. 39, at 22, ¶ 6.  That agreement set forth certain royalty payments that Plaintiff would be entitled to receive in connection with the exploitation of sound recordings that were recorded thereunder.  *Id.* at 22, ¶ 7.  These sound recordings included those on the albums *Kiss This World Goodbye* and *In Search of the Rainbow Seekers*, along with the single "Juicy Fruit: Pt. 2 (Reprise); Juicy Fruit."  *Id.*  Zembu later assigned the 1977 Agreement to Sony's predecessor, CBS Records, and Ifland Corporation ("Ifland") was substituted as a party in Plaintiff's place.  *Id.* at 22, ¶¶ 8, 9.  For decades, Sony paid royalties to Plaintiff with respect to sound recordings created pursuant to the 1977 Agreement at the rates set forth therein.  *Id.* at 23, ¶ 11.

In October 1983, CBS Records and Ifland agreed to terminate Plaintiff's recording obligations under the 1977 Agreement (but not the agreement itself) and entered into a new agreement that, among other things, set forth new recording obligations for Plaintiff (the "1983 Agreement").  *Id.* at 23, ¶ 10.  The 1983 Agreement also contained provisions that supplemented existing provisions in the 1977 Agreement.

In July 2015, Plaintiff served a termination notice on Sony (the "July 2015 Notice") that sought to recapture Plaintiff's purported rights in *Kiss This World Goodbye*, *In Search of the*

*Rainbow Seekers*, and the single "Juicy Fruit: Pt. 2 (Reprise); Juicy Fruit."  Am. Compl., Dkt. No. 11, Ex. A.  Three years later, Plaintiff sued Sony, seeking declaratory relief as to the validity of the July 2015 Notice as well as an accounting of income for the period after the purported effective dates of termination.  *See* Compl., Dkt. No. 1.  Plaintiff subsequently amended his Complaint to add three claims of copyright infringement with respect to the sound recordings at issue in that Notice.  *See* Am. Compl.

Since Plaintiff filed his lawsuit against Sony, it has come to Sony's attention that, for at least the last six years, Sony has inadvertently paid Plaintiff royalties at rates other than those set forth in the 1977 Agreement for sound recordings recorded thereunder.  Answer at 23, ¶¶ 12–13. These overpayments consist of (1) payment of record royalties at the rates specified in Paragraph 9 of the 1983 Agreement rather than the rates specified in Paragraph 6 of the 1977 Agreement and (2) payment of "mechanical" royalties for certain musical compositions embodied in the sound recordings recorded under the 1977 Agreement at the statutory rate under 17 U.S.C. § 115 rather than the lower contractual rates set forth in Paragraph 23 of the 1977 Agreement (referred to as "controlled composition rates").  *Id.*  Plaintiff has retained these overpayments to Sony's detriment.  *Id.* at 23, ¶¶ 12–14.  Accordingly, Sony has asserted counterclaims against Plaintiff for breach of contract/implied covenant of good faith and fair dealing and unjust enrichment, and has also requested declaratory relief concerning the proper royalty rates for sound recordings recorded pursuant to the 1977 Agreement.  Answer at 23–26, ¶¶ 15–31.

## III.    ARGUMENT

### A.  THIS COURT HAS JURISDICTION OVER SONY'S CLAIMS.

Plaintiff's primary argument (and the only one contained in his pre-motion letter) is that this Court lacks supplemental jurisdiction over Sony's counterclaims or, in the alternative, that it should decline to exercise supplemental jurisdiction over the counterclaims.  Pl.'s Mem. of Law

in Supp. of Mot. to Dismiss Def.'s Countercls. ("Opening Br."), Dkt. No. 51, at 2–4.  This argument is patently baseless.

Dismissal under Rule 12(b)(1) for lack of supplemental jurisdiction is appropriate where the district court lacks the constitutional or statutory authority to hear the case.  *See Nixon v. TWC Admin. LLC*, No. 16-CY-6456 (AJN), 2017 WL 4712420, at *4 (S.D.N.Y. Sept. 27, 2017). In determining motions under Rule 12(b)(1), district courts "must accept all material allegations in the complaint as true and construe any doubts or ambiguities in the complaint in favor of the complaining party."  *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18 CIV. 4044 (VM), 2019 WL 4744220, at *5 (S.D.N.Y. Aug. 26, 2019).

A district court has "supplemental jurisdiction over all . . . claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  In order to determine whether claims form part of the same case or controversy, courts look to whether they "derive from a common nucleus of operative fact."  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  A key component in this inquiry is whether the *facts* underlying the federal and state-law claims overlap.  *See Blackrock Balanced Capital Portfolio v. HSBC Bank USA, Nat. Ass'n*, 95 F. Supp. 3d 703, 708 (S.D.N.Y. 2015).

Recognizing that he cannot satisfy this standard, Plaintiff attempts to redefine this inquiry to argue that this Court lacks supplemental jurisdiction because there is no "common thread" between his claims and Sony's counterclaims.  *See* Opening Br. at 3.  But again, the key question is whether there is overlap between the *facts* of the claims and counterclaims, not overlap in the

claims themselves.  There is no doubt that there is a shared common nucleus of operative facts among the claims, specifically the contractual relationship between the parties, the sound recordings recorded under the 1977 Agreement, and Plaintiff's entitlement to royalties under the agreements between the parties.

The only factual argument that Plaintiff offers in support of his contention that this Court lacks supplemental jurisdiction is that Sony's counterclaims relate to a few additional sound recordings and a slightly broader period of time than Plaintiff's claims.  Opening Br. at 3. However, the presence of a "common nucleus" is evident from the fact that Sony's counterclaims relate to the agreements that already are at issue by virtue of Plaintiff's claims and the royalty records that already are implicated by Plaintiff's demand for accounting, which will necessarily require an examination of Sony's financial records related to sound recordings recorded pursuant to the 1977 Agreement.  This is the precise evidence that will be required for Sony's counterclaims (albeit during a somewhat expanded timeframe).  *See Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 403 (S.D.N.Y. 2010) (exercising supplemental jurisdiction where federal and state claims would involve similar witnesses and evidence).

Accordingly, it is beyond dispute that Plaintiff's claims and Sony's counterclaims arise out of a common nucleus of operative fact sufficient to sustain supplemental jurisdiction.  *See Burton v. Label, LLC*, 344 F. Supp. 3d 680, 704 (S.D.N.Y. 2018).

Furthermore, there is no valid basis for this Court to decline to exercise supplemental jurisdiction over Sony's counterclaims.  This Court may only decline to exercise supplemental jurisdiction if the counterclaims in question fall into one of four enumerated categories: (1) "the claim raises a novel or complex issue of State law"; (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; (3) "the district

court has dismissed all claims over which it has original jurisdiction"; or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."   28 U.S.C. § 1367(c); *Shahriar,* 659 F.3d at 245.  Plaintiff does not address three of these four categories.  *See* Opening Br. at 2–4.  Instead, Plaintiff conclusorily alleges that Sony's factually focused counterclaims somehow would predominate over his claims.  *Id.* at 3–4.  However, this assertion is facially absurd as the counterclaims relate to two discrete sets of royalty calculations while Plaintiff's claims for copyright infringement, an accounting, and declaratory relief necessitate a complex inquiry into decades-old events, such as the business relationship between Plaintiff and Sony's predecessors and the nature of the contributions of other musicians and performers to the sound recordings in question.  Additionally, Plaintiff's demand for declaratory relief involves at least one thorny matter of first impression—whether so-called gap grants are subject to termination—and potentially others if this Court ultimately were to find that gap grants are subject to termination (which they are not).

In analyzing Plaintiff's Motion to Dismiss, it is important to underscore that Sony has alleged an affirmative defense that Plaintiff's damages, if any, are limited by Sony's right to set-off the royalty overpayments.  Answer at 21, ¶ 11.  Accordingly, the very evidence at issue on the counterclaim will be part of this case regardless of the disposition of this motion.  Courts have recognized the presence of such an affirmative defense to be a powerful factor in exercising supplemental jurisdiction.  *See Klein* v. *London Star, Ltd.,* 26 F. Supp. 2d 689, 697 (S.D.N.Y. 1998) (exercising supplemental jurisdiction over counterclaim where "the counterclaim [was] also an affirmative defense, and thus no additional discovery [would] be required").

Finally, it is in the interest of judicial economy to address both Plaintiff's and Sony's claims involving the 1977 Agreement within the same lawsuit, rather than requiring Sony to

bring a separate lawsuit against Plaintiff in state court.  *See Blackrock Balanced Capital Portfolio,* 95 F. Supp. 3d at 711 ("Declining to exercise supplemental jurisdiction would actually increase the complexity of the action by creating parallel proceedings regarding one subject matter.").  Accordingly, it is clear that this Court has supplemental jurisdiction over Sony's counterclaims, and none of the enumerated categories for declining jurisdiction apply.

## B. SONY HAS SUFFICIENTLY STATED A CLAIM WITH RESPECT TO ITS COUNTERCLAIMS.

As a threshold matter, Plaintiff's arguments that the counterclaims should be dismissed for failure to state a claim should be rejected due to his manifest failure to raise these issues in the pre-motion conference letter and at the pre-motion conference itself.  These arguments should also be rejected both because they are meritless and because many of them are inappropriate for resolution at this stage.

A district court must deny a motion to dismiss where the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  For a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in [the non-moving party's] favor."  *Rothstein v. UBS AG*, 708 F.3d 82, 90 (2d Cir. 2013).  A claim need not allege "facts which can have no conceivable other explanation, no matter how improbable that explanation may be."  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 360 (2d Cir. 2013).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).

Here, Plaintiff fails to demonstrate that any of Sony's counterclaims are subject to dismissal pursuant to Rule 12(b)(6).  As such, Plaintiff's Motion must be rejected.

1.      **Sony Sufficiently Pleaded Its Breach of Contract/Implied Covenant of Good Faith and Fair Dealing Claim.**

Sony has properly pleaded its breach of contract counterclaim.  In pleading breach of contract claims under New York law, the pleading party is only required to allege (1) the existence of an agreement, (2) performance by the pleading party, (3) breach, and (4) damages due to the breach.  *See Royal Park Invs. SA/NV v. HSBC Bank USA, Nat. Ass'n*, 109 F. Supp. 3d 587, 596–97 (S.D.N.Y. 2015).  Sony's allegations have met this threshold.  Sony has alleged that the parties entered into the 1977 Agreement and the 1983 Agreement, that Sony has performed its obligations under both the 1977 Agreement and the 1983 Agreement, that Plaintiff has retained an overpayment of royalties to which he is not entitled, and this improper retention of overpaid royalties has been to Sony's detriment.  Answer at 22–24, ¶¶ 6–22.

Sony has adequately pleaded the provisions on which its breach of contract counterclaim is based.  Sony alleged the contractual provisions that set forth the royalty rates to which Plaintiff is entitled (Paragraphs 6 and 23 in the 1977 Agreement and Paragraph 9 in the 1983 Agreement) and that Plaintiff improperly retained royalty payments in excess of these rates.  Answer at 23, ¶¶ 12–13; Declaration of Andrew. H. Bart ("Bart Decl.") ¶ 2, Ex. A (1977 Agreement ¶¶ 6, 23); *id.* ¶ 3, Ex. B (1983 Agreement ¶ 9).[1]  Additionally, the 1983 Agreement explicitly states that Plaintiff must reimburse Sony for *any* overpayments of royalties.  *Id.* (1983 Agreement ¶ 11.01) ("If CBS makes any overpayment to you, you will reimburse CBS for it . . . .").  Sony has further

---

[1] Plaintiff only attached excerpts of the 1977 Agreement and the 1983 Agreement to his Motion to Dismiss.  Sony provides both agreements in full to provide the necessary context.

alleged that Plaintiff has retained these overpayments, rather than reimbursing Sony.  Answer at 23–24, ¶¶ 14, 21.[2]

Plaintiff's assertions that Sony's breach of contract counterclaim with respect to the 1983 Agreement is deficient because it did not comply with that agreement's provision concerning notice and an opportunity to cure also fail, *see* Opening Br. at 5, since it is well-established that a party is not required to strictly comply with such a provision where doing so would be futile. *See, e.g.*, *Oliver Wyman, Inc. v. Eielson*, No. 15 CIV. 5305 (RJS), 2016 WL 5339549, at *9 (S.D.N.Y. Sept. 22, 2016).  There is neither any evidence nor argument supporting the notion that Plaintiff would voluntarily repay these overpayments to Sony.  To the contrary, he could easily moot Sony's counterclaims by doing so, but he has chosen to move to dismiss instead of repaying the royalties.

In any event, Sony was not required to plead its compliance with the "opportunity to cure" provision in the 1983 Agreement.  Any purported failure to comply with this provision is an affirmative defense, and Sony "was not required to plead around [Plaintiff's] affirmative defense in order to state a claim for breach of contract."  *See IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 403–02 (S.D.N.Y. 2009).

Finally, Sony has sufficiently pleaded its claim for breach of the implied covenant of good faith and fair dealing as an alternative theory for its breach of contract counterclaim.  *See Fantozzi v. Axsys Techs., Inc.*, No. 07 CIV. 02667 (LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008) (recognizing that claims for breach of contract and breach of covenant of good

---

[2] While Sony believes that its allegations are sufficient to state a claim for breach of contract, Sony respectfully requests leave to amend its counterclaim to specifically reference Paragraph 11.01 in the event that this Court disagrees.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Cruz v. TD Bank, N.A.*, 742 F.3d 520, 523 (2d Cir. 2013).

faith and fair dealing may be pleaded in alternative).  Under New York law, all contracts include

an implied covenant of good faith and fair dealing that "precludes each party from engaging in

conduct that will deprive the other party of the benefits of their agreement."  *Orange Cty.*

*Choppers, Inc. v. Olaes Enters., Inc.*, 497 F. Supp. 2d 541, 560 (S.D.N.Y. 2007) (citations

omitted).  Here, Sony's counterclaim properly asserts a theory of breach of the implied covenant

of good faith and fair dealing that is premised on Plaintiff's wrongful retention of overpaid

royalties to which he is not entitled and cannot equitably and in good faith retain.  Answer at 23–

24, ¶¶ 15–22.  This theory is properly raised in the alternative in the event that Plaintiff's conduct

in failing to return the overpayments of royalties is not found to be a breach of the express terms

of the relevant agreements, and is instead determined to be a violation of the implied covenant

contained in those agreements.  *See Fantozzi*, 2008 WL 4866054, at *7 (noting that breach of

contract and breach of implied covenant of good faith and fair dealing may be asserted in

alternative "where there is a bona fide dispute concerning existence of a contract or whether the

contract covers the dispute in issue" (citations omitted)).

   Accordingly, Sony has sufficiently pleaded its breach of contract claim, and Plaintiff's

Motion to Dismiss must be denied.

### 2.      Sony Sufficiently Pleaded Its Unjust Enrichment Claim.

   In order to state a claim for unjust enrichment, Sony must allege that "(1) defendant was

enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against

permitting defendant to retain what plaintiff is seeking to recover."  *105 Mt. Kisco Assocs. LLC*

*v. Carozza*, No. 15 CIV. 5346 (NSR), 2019 WL 6998008, at *13 (S.D.N.Y. Dec. 20, 2019)

(quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).  Sony

has alleged that Plaintiff was unjustly enriched through his retention of an overpayment of

royalties to Sony's detriment and that it is against equity and good conscience for Plaintiff to

retain these overpaid royalties.  Answer at 22–23, 24–25, ¶¶ 6–14, 23–26.  As such, it has sufficiently stated a claim for unjust enrichment.

Plaintiff argues that Sony's unjust enrichment claim should be dismissed because it is duplicative of Sony's breach of contract claim.  Opening Br. at 6–7.  However, it is well-established that unjust enrichment claims may be pleaded in the alternative.  *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-CV-1376 PKC, 2014 WL 4393320, at *22 (S.D.N.Y. Sept. 5, 2014); *see also Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996).  Courts have held that pleading in the alternative may be especially appropriate where "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled."  *Eidelman v. Sun Prod. Corp.*, No. 16-CV-3914 (NSR), 2017 WL 4277187, at *6 (S.D.N.Y. Sept. 25, 2017) (citations omitted).  Here, Sony's unjust enrichment claim is a proper alternative basis of liability in the event that Plaintiff's overpayment of royalties is found not to be a breach of an explicit contractual provision in either agreement.

Plaintiff also alleges that the statute of limitations for an unjust enrichment claim is three years, rather than six years, and Sony's unjust enrichment should be so limited.  Opening Br. at 7–8.  However, courts have held that the proper statute of limitations for an unjust enrichment claim that is pleaded in the alternative to a breach of contract claim is six years.  *See Hongxia Wang v. Enlander*, No. 17 CIV. 4932 (LGS), 2018 WL 1276854, at *8 (S.D.N.Y. Mar. 6, 2018); *Garson v. Garson*, No. 16 CIV. 6167 (KPF), 2017 WL 2915386, at *5 (S.D.N.Y. July 6, 2017).  And, in any event, this argument is more properly raised as an affirmative defense rather than as a basis for dismissal.  *See Essex Capital Corp. v. Garipalli*, No. 17 CIV 6347 (JFK), 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018) (observing that "[a] statute of limitations affirmative defense normally cannot be decided on a motion to dismiss").

Sony has properly pleaded its unjust enrichment claim, and Plaintiff's Motion to Dismiss Sony's unjust enrichment claim must be rejected.

### 3.   The Voluntary Payment Doctrine Does Not Bar Sony's Claims.

Under the voluntary payment doctrine, recovery is not permitted where payments were made voluntarily with full knowledge of the facts and without fraud or mistake of material fact or law. *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 276 (S.D.N.Y. 2014). However, as a threshold matter, the parties contractually agreed that Plaintiff would be responsible to repay any overpayments, thus precluding application of the voluntary payment doctrine. *See* Bart Decl. ¶ 3, Ex. B (1983 Agreement ¶ 11.01). But in any event, Sony has alleged that its overpayment of royalties to Plaintiff was due to a mistake caused by an inadvertent accounting error, rendering this doctrine inapplicable. Answer at 23, ¶ 12. Nonetheless, Plaintiff argues that the voluntary payment doctrine is applicable and warrants dismissal of Sony's breach of contract and unjust enrichment counterclaims because Sony was "solely responsible" for determining the applicable rates and the fact that Sony made an "inadvertent internal accounting error" somehow demonstrates that Sony "should have known" that the royalty payments made to Plaintiff were incorrect. *See* Opening Br. at 8–10. However, this very acknowledgement of an "inadvertent error" is a dispositive admission that Sony has alleged a mistake of material fact that precludes the application of the voluntary payment doctrine. Regardless, and at minimum, further factual development is required to determine applicability of the voluntary payment doctrine.

In line with this, courts have recognized that application of the voluntary payment doctrine may be inappropriate on a motion to dismiss. *See, e.g.*, *Farina v. Metro. Transp. Auth.*, No. 18-CV-1433 (PKC), 2019 WL 3966163, at *11 (S.D.N.Y. Aug. 21, 2019). Tellingly, Plaintiff does not cite a single case where a court granted a motion to dismiss based on the voluntary payment doctrine. *See* Opening Br. at 8–10; *Wurtz v. Rawlings Co., LLC*, No.

12CV1182JMAAKT, 2016 WL 7174674, at *1 (E.D.N.Y. Nov. 17, 2016) (summary judgment); *Cobalt Multifamily Inv'rs I, LLC v. Bridge Capital (USVI), LLC*, No. 06 CIV. 5738 KMW MHD, 2007 WL 2584926, at *1 (S.D.N.Y. Sept. 7, 2007) (motion to enforce agreement); *Turner Network Sales, Inc. v. DISH Network LLC*, No. 17-CV-7599 (RA), 2019 WL 4735402, at *1 (S.D.N.Y. Sept. 27, 2019) (summary judgment).  In fact, "[t]he voluntary payment doctrine is generally considered to be an affirmative defense, and a plaintiff is 'not required to preemptively plead facts refuting' such a defense." *Franze v. Bimbo Foods Bakeries Distribution, LLC*, No. 717CV03556NSRJCM, 2019 WL 1244293, at *4 (S.D.N.Y. Mar. 15, 2019) (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d. Cir. 2009)).  Plaintiff's challenges to Sony's counterclaims based on the voluntary payment doctrine are premature and must be rejected.

### 4.    Sony Sufficiently Stated a Claim for Relief under the Declaratory Judgment Act.

Sony has also asserted a counterclaim seeking a declaration that the royalty rates in the 1977 Agreement govern.  Plaintiff asserts that Sony's requested declaration is duplicative of its other counterclaims and must be dismissed.  Opening Br. at 11–12.  However, the request for a declaratory judgment is a distinct claim from Plaintiff's claims seeking return of overpayments over the past several years.  Answer at 25–26, ¶¶ 27–31.  While Sony's counterclaims for breach of contract and unjust enrichment seek the return of overpayment of royalties over the past few years, Sony's requested declaration seeks clarification of the proper royalties moving forward. *Compare* Answer at 24, ¶ 22 *and id.* at 25, ¶ 26, *with id.* at 25–26, ¶ 31; *see also RJ Capital, S.A. v. Lexington Capital Funding III, Ltd.*, No. 10 CIV.24 PGG, 2011 WL 3251554, at *15 (S.D.N.Y. July 28, 2011) (determining that requested declaration was not duplicative of breach of contract claim where breach of contract claim would "settle the controversy only with respect to [past distributions], and not with respect to future distributions").

Sony's request for declaratory relief is also appropriate because it will clarify the proper prospective royalty rates in the event that this Court determines that Sony is not entitled to return of overpayments for some other reason.  Accordingly, Sony's request for declaratory relief is not duplicative, and Plaintiff's Motion to Dismiss Sony's counterclaim for declaratory relief should be rejected.

## C.  DISMISSAL FOR FAILURE TO JOIN A PARTY IS NOT WARRANTED.

Finally, Plaintiff disingenuously argues that Sony's breach of contract claim should be dismissed for failure to join an indispensable party: namely, Ifland.  Opening Br. at 6.  Dismissal for failure to join a party is required only if "(1) an absent party is required, (2) it is not feasible to join the absent party, and (3) it is determined in equity and good conscience that the action should not proceed among the existing parties."  *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 380 (S.D.N.Y. 2017) (internal citations omitted).  As with motions under Rule 12(b)(1) and 12(b)(6), all factual allegations are presumed true and presented in the light most favorable to the nonmoving party with respect to a motion to dismiss for failure to join a party under Rule 12(b)(7).  *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 354 (2d Cir. 2015).  "Federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder and, in general, dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result."  *Id.* at 357 (quoting 7 Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1609 (3d ed. 2015)).[3]

Notwithstanding the fact that it is his burden to show that Ifland's presence in this action is required, *see Sec. & Exch. Comm'n v. Curshen*, No. 08 CIV. 7893 (PGG), 2014 WL

---

[3] Courts are not limited to the pleadings when ruling on a motion to dismiss pursuant to Rule 12(b)(7).  *See EMR (USA Holdings), Inc. v. Goldberg*, No. 18 CIV. 07849 (ER), 2019 WL 5537878, at *4 (S.D.N.Y. Oct. 25, 2019).

12791876, at *5 (S.D.N.Y. Mar. 21, 2014), Plaintiff simply states that Ifland is a contracting party to the 1983 Agreement and asserts that complete relief cannot be afforded in its absence. Opening Br. at 6.  This allegation is unsupported, self-serving, and plainly insufficient to meet Plaintiff's burden.

Whether an absent party is "required" depends on "whether the non-party's absence will impair or impede its ability to protect its interests" and "examines the effects on the non-party." *See Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 257–58 (S.D.N.Y. 2010).  Here, Sony's allegations are based on overpayments of royalties directly to Plaintiff or his designees on his behalf—not Ifland.  Answer at 23–24, ¶¶ 12–13, 18.  Nothing in Sony's allegations (or in Plaintiff's motion) suggests that Ifland has any interest in the payments in question, and there is nothing to suggest that Ifland's absence from this lawsuit will impair its interests.  In fact, public records demonstrate that Ifland has not been an active corporation for over three decades—a fact that Plaintiff is plainly aware of, since he had authority to act on Ifland's behalf.  *See* Bart Decl. ¶ 4, Ex. C (New Jersey Business Status Report listing Ifland Corporation as void for failure to pay taxes as of 1988); *id.* ¶ 3, Ex. B (1983 Agreement listing Plaintiff as authorized signatory).

The disingenuousness of Plaintiff's argument is further underscored by the fact that Plaintiff—by himself and without Ifland—has asserted a claim for an accounting against Sony, even though Ifland was substituted for Plaintiff as a party to the 1977 Agreement, as he acknowledges.  Opening Br. at 6.  Plaintiff thus has failed to meet his burden, and his Motion must be denied.  *See Ashley v. Am. Airlines, Inc.*, 738 F. Supp. 783, 788 (S.D.N.Y. 1990) (denying motion to dismiss where moving party "failed to provide any significant support for its arguments on this issue" and "neither identified the factual bases for its assertion of this defense,

nor presented any supporting evidence as to the absent persons' interests in this action or the reason why relief cannot be fully accorded without their presence").

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion to Dismiss should be denied.  In the event that the Court grants the Motion, in whole or in part, Sony respectfully requests leave to amend its counterclaims.  *See* Fed. R. Civ. P. 15(a)(2); *Cruz*, 742 F.3d at 523.


Dated: February 3, 2020                          JENNER & BLOCK LLP

                                     By:    /s/ Andrew H. Bart
                                     _____
                                            Andrew H. Bart
                                            919 Third Avenue, 38th Floor
                                            New York, New York 10022
                                            Telephone: (212) 891-1600
                                            Facsimile: (212) 891-1699

                                            *Counsel for Defendant Sony Music Entertainment*