UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES MTUME,

                              Plaintiff,

              - against -

SONY MUSIC ENTERTAIMENT,

                              Defendant.

**OPINION AND ORDER**

18 Civ. 6037(ER)

Ramos, D.J.:

     James Mtume ("Mtume") initiated this copyright action against Sony Music

Entertainment ("Sony").  After the Court denied its motion to dismiss, Sony filed an answer

asserting certain counterclaims against Mtume.  Through its counterclaims, Sony seeks to

recover for the purported overpayment of licensing fees that Sony inadvertently paid Mtume.

These licensing fees relate to the same works relevant to Mtume's claims, as well as a number of

others.  Mtume moves to dismiss all counterclaims.  For the reasons set forth below, the motion

is GRANTED in part and DENIED in part.

## I.     BACKGROUND

     In his Amended Complaint, filed on August 13, 2018, Mtume, a musician, alleges claims

under the copyright laws of the United States relating to his purported termination of rights

conveyed to Sony for three works created pursuant to a 1977 agreement between Mtume and

CBS Records, Sony's predecessor (the 1977 Agreement").  (Doc. 11.)  The Amended Complaint

also seeks declaratory judgment, an accounting, and recovery for three claims of copyright

infringement.  (*Id.*)

After the Court denied Sony's motion to dismiss, Sony filed its Answer to the Amended Complaint. In its Answer, Sony also asserts four counterclaims, for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) declaratory judgment. Sony's counterclaims all stem from allegations that "[d]ue to an inadvertent internal accounting error," Sony overpaid record royalties to Mtume and/or his designees for works created pursuant to the 1977 Agreement. (Doc. 39 ("Counterclaims") ¶ 12.)

In 1983, Ifland Corporation[1] and CBS entered into another agreement (the "1983 Agreement") that created new recording obligations for Mtume, subject to different royalty rates than those prescribed in the 1977 Agreement, and which terminated Mtume's recording obligations under the 1977 Agreement. (*Id.* ¶ 10.) The overpayments at issue in Sony's counterclaims relate to works created pursuant to the recording obligations in the 1977 Agreement, not the 1983 Agreement. According to Sony, however, Sony inadvertently paid Mtume at the royalty rates prescribed by Paragraph 9 of the 1983 Agreement, rather than the rates called for in Paragraph 6 the 1977 Agreement. (*Id.*) Separately, Sony also alleges that it inadvertently paid Mtume "mechanical royalties for digital exploitation of certain musical compositions embodied in the sound recordings created pursuant to the 1977 Agreement at the statutory rate rather than the controlled composition rates specified in Paragraph 23 of the 1977 Agreement." (*Id.* ¶ 13.)

Sony alleges breaches of both the 1977 Agreement and the 1983 Agreement. Paragraph 6 of the 1977 Agreement specifies certain royalty rates that "Producer will pay to Artist in respect of recordings made hereunder." (Doc. 56-1 ("1977 Agreement") ¶ 6.) Paragraph 23 of

---

[1] Sony's Counterclaims do not explain the relationship between Ifland Corporation and Mtume, though it notes that, in 1983, Ifland Corporation was substituted as a party to the 1977 Agreement in place of Mtume. (*Id.* ⁋ 9.) Sony's opposition papers suggest that Ifland Corporation is now defunct. (Doc. 55 at 16.)

that agreement, which relates to mechanical licenses for musical compositions recorded pursuant to the 1977 Agreement, specifies other rates that "Producer will be required to pay. . .."  (*Id*. ¶ 23(a).)  The 1983 Agreement, too, has a provision relating to the royalties "CBS will pay. . .." (Doc. 56-2 ("1983 Agreement") ¶ 9.)  Lastly, as relevant to the Court's consideration of the instant motion, the 1983 Agreement also includes a paragraph—Paragraph 11—entitled "Royalty Accountings," describing, among other things, when CBS will compute royalties, when CBS will provide statements regarding those royalties, and, most relevant here, requiring that Mtume repay CBS in the event that "CBS makes any overpayment."  (1983 Agreement ¶ 11.)

## II.    LEGAL STANDARD

### a.    12(b)(1):  Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits. . .."  *Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff.  *J.S.*

*ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

     b.  <u>12(b)(6):  Failure to State a Claim</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557).  However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n. 3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted).  Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and

4

draws all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . ..").  "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

## II.   DISCUSSION

Mtume moves to dismiss Sony's counterclaims on the grounds that (1) the Court lacks subject matter jurisdiction over Sony's claims; (2) Sony fails to state a claim for breach of contract; (3) Sony's breach of the implied covenant of good faith and fair dealing are duplicative of the breach of contract claims; (4) Sony's unjust enrichment claim is duplicative of the breach of contract claims; (5) part of Sony's unjust enrichment claim is time-barred; (6) Sony's breach of contract and unjust enrichment claims are barred by the doctrine of voluntary payment; and (7) Sony's declaratory judgment claim is duplicative of the breach of contract and unjust enrichment claims.  The Court addresses each argument in turn.

### A.  The Court's Subject Matter Jurisdiction Over Sony's Counterclaims

Sony invokes the Court's supplemental jurisdiction as a basis for the Court to decide its counterclaims against Mtume.

When, as here, a court has original jurisdiction over some claims in an action, it may also exercise supplemental jurisdiction over other claims when they "form part of the same case or controversy."  28 U.S.C. § 1367(a).  The central inquiry is whether the two sets of claims "derive from a common nucleus of operative fact," such that a plaintiff would ordinarily be expected to try them all in a single proceeding.  *Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d

234, 245 (2d Cir. 2011); *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d

Cir. 2000). "In determining whether two disputes arise from a 'common nucleus of operative

fact,' [courts within the Second Circuit] have traditionally asked whether 'the facts underlying

the federal and state claims substantially overlap[] . . . [or] the federal claim necessarily [brings]

the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire,*

*LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville*, 211 F.3d at 704)).

      Where the requisites of § 1367(a) are satisfied, a court may only decline supplemental

jurisdiction if it is statutorily required, *see* § 1367(b) (restricting the exercise of supplemental

jurisdiction when premised on diversity jurisdiction), or if they have the discretion to do so:

> The district courts *may* decline to exercise supplemental jurisdiction over a claim under
> subsection (a) *if*—
>> (1) the claim raises a novel or complex issue of State law,
>> (2) the claim substantially predominates over the claim or claims over which the
>> district court has original jurisdiction,
>> (3) the district court has dismissed all claims over which it has original
>> jurisdiction, or
>> (4) in exceptional circumstances, there are other compelling reasons for declining
>> jurisdiction.

28 U.S.C. § 1367(c) (emphasis added); *see also Shahriar*, 659 F.3d at 245 ("the discretion to

decline supplemental jurisdiction is available *only if* founded upon an enumerated category of

subsection 1367(c).") (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d

422, 488 (2d Cir. 1998)).

      Mtume argues that "there is no common thread" between his federal copyright claims and

Sony's claim seeking to recover alleged overpayment.  The Court disagrees.

      As Mtume's counsel noted at the pre-motion conference held on December 3, 2019,

through its copyright claims, Mtume seeks to recover Sony's profits or statutory damages, an

"election . . . [to be] made at some point in the case."  (Doc. 53 at 4:4-7.)  In connection with the

request to recoup Sony's profits, Mtume has also brought a claim for an accounting "to allow [Mtume] to obtain the information necessary to determine Sony's gross profits for the post-termination period," although Mtume's counsel acknowledged that "discovery of this information is also subsumed in the copyright infringement claim." (*Id*. at 4:17-21.)  As part of this endeavor to calculate Sony's profits, the case will inevitably involve investigation into what Sony paid Mtume, a foundational inquiry in resolving Sony's claims also. *See Chaluisan v. Simsmetal E. LLC*, 698 F. Supp. 2d 397, 403 (S.D.N.Y. 2010) (finding "a strong rationale for exercising supplemental jurisdiction" where federal and state claims "will involve similar witnesses and evidence.")  Indeed, this inquiry, it seems from the Court's perspective, is the largest factual issue underlying Sony's counterclaims.  The other inquiry required by Sony's counterclaims, what Sony ought to have paid, would seem to be a straightforward issue of contract, and perhaps statutory, interpretation.

Mtume counters that Sony's claims are broader because Mtume's claims go back only to 2017 and involve three works, while Sony's go back to 2013 and involve all works created under the 1977 Agreement.  While it is true that Sony's claims will involve evidence not implicated by Mtume's claims, the Court nonetheless finds a common nucleus of facts. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 336 (2d Cir. 2006) (finding overlap even where state law causes of action involved some facts that were not directly implicated by the federal cause of action.)  Moreover, it is likely that, even if broader, the factual inquiry into Sony's counterclaims will nonetheless involve largely the same witnesses and largely the same type of evidence and discovery as the inquiry into some of Mtume's claims. *See Chaluisan*, 698 F. Supp. 2d at 403.

Mtume argues that even if the Court finds it has supplemental jurisdiction, it should nonetheless decline to exercise it because Sony's claims will substantially predominate over

Mtume's federal claims.  Mtume argues that the counterclaims require "interpretation with respect to a large group of works" and will therefore predominate over Mtume's claims which raise "a discrete legal issue with respect to a distinct group of three works."  (Doc. 51 at 3-4.) While Sony's claims may implicate more works, they do not multiply the complexity of the case. Sony's claims, which boil down to whether Sony paid Mtume the correct royalty rate, appear, if anything, less complex than, and unlikely to "substantially predominate" over, Mtume's multiple federal claims.  Accordingly, the Court finds that it has subject matter over Sony's counterclaims.

### B.  Breach of the Express Terms of the 1977 and 1983 Agreements

Sony alleges breaches of both the 1977 and 1983 agreements, and alleges that Mtume breached the express terms of both the contracts, as well as their implied covenant of good faith and fair dealing "by retaining the overpayments."  (Counterclaims ¶ 21.)

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the [party bringing the claim], (3) breach of contract by the [other party], and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citations omitted).  "When pleading these elements, a plaintiff must identify the specific provision of the contract that was breached as a result of the acts at issue."  *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002), *aff'd*, 65 F. App'x 736 (2d Cir. 2003) (citing *Levy v. Bessemer Trust Co., N.A.*, No. 97 Civ. 1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997)).

Mtume argues the breach of contract claim must fail because Sony has failed to identify a specific provision that Mtume is alleged to have breached.  While Sony does not specifically state in its Counterclaims which provisions Mtume allegedly breach, it clarifies in its opposition papers its view that Mtume breached those provisions setting forth the appropriate royalty rates:

Paragraphs 6 and 23 of the 1977 Agreement and Paragraph 9 of the 1983 Agreement.  Sony also claims, again only in its opposition papers, that Mtume also breached a provision in the 1983 Agreement requiring Mtume to "reimburse CBS" for "any overpayment."  (1983 Agreement ¶ 11.01.)

The Court agrees with Mtume that the claims warrant dismissal.  The Counterclaims do not specifically identify the provisions Mtume is alleged to have breached, and must be dismissed on that basis alone.  *See Wolff*, 210 F. Supp. at 494.  But, Sony also does not plausibly allege a breach of the contractual provisions identified in its opposition papers.  The relevant portions of the provisions Sony identifies, Paragraphs 6 and 23 of the 1977 Agreement and Paragraph 9 of the 1983 Agreement, impose payment obligations on *Sony*, not Mtume.  (*See* 1977 Agreement ¶ 6 ("Producer will pay to Artist in respect of recordings made hereunder, the following total royalty upon the terms hereinafter set forth . . ..") ¶ 23(a) (. . . "Producer will be required to pay. . ..."); 1983 Agreement ¶ 9.01 ("CBS will pay you a royalty . . ..")  To the extent an incorrect rate was paid, it is Sony who is at fault.

Sony's claim that Mtume breached the 1983 Agreement's provision requiring Mtume to repay any overpayment similarly has no merit.  That provision plainly relates to the payment of royalties for recordings made pursuant to *that* agreement, but Sony's counterclaims make clear it is seeking to enforce the royalty rates included in the 1977 Agreement.  Thus, any "breach" alleged must necessarily and exclusively relate to the 1977 Agreement.  Sony's claim is particularly puzzling because one of the foundations of its breach of contract claim is that Sony inadvertently paid Mtume royalties at the rate specified in Paragraph 9 of the 1983 Agreement, rather than Paragraph 6 of the 1977 Agreement.  Clearly Sony agrees that the payment of royalties prescribed by 1983 Agreement is not relevant here.

Accordingly, Sony's claim that Mtume breached the express provisions of the 1977 and 1983 Agreements are dismissed without leave to amend.

### C.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Sony also alleges breaches of the contracts' implied covenant of good faith and fair dealing.

As referenced above, the payments at issue relate to works created pursuant to the 1977 Agreement, not the 1983 Agreement.  Sony does not explain—other than by stating its view that the 1983 Agreement requires the repayment of overpayment, an interpretation rejected above—how the 1983 Agreement is relevant to the dispute here.  The Court does not see it, and rules that any implied covenant read into the 1983 Agreement is not applicable to the facts here.  The Court, therefore, dismisses the claim as it pertains to the 1983 Agreement, without leave to amend.[2]

Mtume seeks to dismiss Sony's breach of the implied covenant claim as it pertains to the 1977 Agreement on the grounds that it is duplicative of the breach of contract claim.

New York law implies a covenant of good faith and fair dealing in every contract "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted).  Where, as all agree is the case here, a claim for breach of the implied covenant of good faith and fair dealing is based on the same facts as a claim for a breach of contract, the former must be dismissed as redundant.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n. 17 (2d Cir. 2011)

---

[2] Mtume also argues that any claim brought for breach of the1983 Agreement should be dismissed because Sony has failed to comply with a provision in that agreement requiring a party seeking damages to first provide notice and an opportunity to cure before bringing suit.  Sony claims that it was not required to comply with this provision as it would have been futile.  Because the Court dismisses the claims for breach of the 1983 Agreement for other reasons, it need not resolve this issue.

("Because L–7's claim for breach of the implied covenant of good faith and fair dealing (Count IV) is based on the same facts as its claim for breach of contract, it should have been dismissed as redundant.")  This is so even where the breach of contract claim is also dismissed.  *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 367 (S.D.N.Y. 2009) ("[T]he weight of authority in this district strongly supports the dismissal of an implied covenant claim based on the same underlying facts as a breach of contract claim.  This proposition holds even if the contract claim was rejected at the motion to dismiss or summary judgment stages.") (citing *Peabody v. Weider Publ'ns, Inc.,* No. 04 Civ. 2165 (GBD), 2006 WL 3802214, at **3–5 (S.D.N.Y. Dec. 26, 2006); *Echostar DBS Corp. v. Gemstar–TV Guide Int'l, Inc.,* No. 05 Civ. 8510 (DAB), 2007 WL 438088, at **5–8 (S.D.N.Y. Feb. 08, 2007); *see also Gray v. Toyota Motor Sales, U.S.A., Inc.* 806 F. Supp. 2d 619, 624 (E.D.N.Y) (dismissing implied covenant claim as redundant "even though the Court has already dismissed the breach of contract claim.") (citing *Odingo v. Allstate Ins. Co.,* 251 A.D.2d 81 (1st Dep't 1998)).

Sony responds by pointing to caselaw suggesting that a party may allege a breach of covenant claim in the alternative where there is a "dispute concerning [the] existence of a contract or whether the contract covers the dispute in issue."  (Doc. 55 at 11 (quoting *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 02667 (LMM), 2008 WL 4866054, at *7 (S.D.N.Y. Nov. 6, 2008).)  However, as another Court in the District has noted, *Fantozzi* justified its decision by citing caselaw relevant to quasi-contract claims, which implied covenants are not.  *Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of New York Mellon*, No. 11 Civ. 5459 (WHP), 2014 WL 3858469, at *4 (S.D.N.Y. July 30, 2014).  ("[A]n implied covenant does not offer an alternate remedy to a contract claim; it is embedded in every contract.")  *Id*.  The Court does not find Sony's authority persuasive on this issue.

The Court, therefore, also dismisses with prejudice Sony's claim that Mtume breached the implied covenant of good faith and fair dealing embedded in the 1977 Agreement.[3]

### D. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiffs' expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover. *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). "The 'essence' of such a claim 'is that one party has received money or a benefit at the expense of another.'" *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (quoting *City of Syracuse v. R.A.C. Holding, Inc.*, 258 A.D.2d 905 (4th Dep't 1999)).

Sony alleges that Mtume was unjustly enriched by retaining royalties that Sony paid above what he was contractually owed, and that it is against equity and good conscious for Mtume to retain that overpayment. Mtume moves to dismiss on the grounds that the unjust enrichment claim is duplicative of the breach of contract claim, that it is precluded by the "voluntary payment doctrine," and that, if the claim is allowed to proceed, it should be limited to a three-year statute of limitations period.

### a. Unjust Enrichment as Duplicative of Breach of Contract

While courts frequently dismiss unjust enrichment claims as duplicative of contract claims, "New York law . . . 'permits the alternative pleading of breach of contract and unjust enrichment claims—and the survival of both claims at the motion to dismiss stage'—where the applicability of the contract is disputed." *Hallmark Aviation Ltd. v. AWAS Aviation Servs., Inc.*, No. 12 Civ. 7688 (JFK), 2013 WL 1809721, at *5 (S.D.N.Y. Apr. 30, 2013) (citing *IceboxScoops*

---

[3] Mtume argues that Sony's contractual claims should also be dismissed because Sony has failed to join Ifland Corp., who was substituted for Mtume as a party to the 1977 Agreement and is also a party to the 1983 Agreement. The Court need not address the argument as it dismisses the claims on other grounds.

*v. Finanz St. Honor, B.V.*, 676 F.Supp.2d 100, 114 (E.D.N.Y. 2009).  Moreover, the New York

Court of Appeals has warned that unjust enrichment "is available only in unusual situations" and

has noted that the typical such case is one "in which the defendant, though guilty of no

wrongdoing, has received money to which he or she is not entitled."  *Corsello v. Verizon New*

*York, Inc.*, 18 N.Y.3d 777, 790 (2012) (citing *Markwica v. Davis*, 64 N.Y.2d 38, (1984); *Kirby*

*McInerney & Squire, LLP v. Hall Charne Burce & Olson, S.C.*, 15 A.D.3d 233, (2005)).

    The Court declines to dismiss the unjust enrichment claim at this time.  Sony alleges the

precise scenario the New York Court of Appeals has found most warrants a finding of unjust

enrichment—one party, though not at fault, received money to which he was not entitled.

### b.  Voluntary Payment Doctrine

    Mtume also claims the voluntary payment doctrine precludes Sony's unjust enrichment

claim.[4]

    "The voluntary payment doctrine precludes a plaintiff from recovering payments 'made

with full knowledge of the facts' and with a 'lack of diligence' in determining his contractual

rights and obligations.  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 72 (2d Cir. 2009) (citing *Dillon v.*

*U–A Columbia Cablevision of Westchester, Inc.*, 292 A.D.2d 25 (App. Div. 2002); *Westfall v.*

*Chase Lincoln First Bank, N.A.*, 258 A.D.2d 299 (App. Div. 1999); *Gimbel Bros., Inc. v. Brook*

*Shopping Ctrs., Inc.*, 118 A.D.2d 532 (App. Div. 1986)).  "The doctrine does not apply, however,

when a plaintiff made payments under a mistake of fact or law regarding the plaintiff's

contractual duty to pay."  *Id*. (citing *Dillon*, 740 N.Y.S.2d at 397; *Gimbel*, 499 N.Y.S.2d at 438).

    As an affirmative defense, courts in the Circuit have been reluctant to dismiss claims

pursuant to the voluntary payment doctrine at the pleading stage, doing so only where "its

---

[4] Mtume argues that this doctrine also precludes Sony's contractual claims, claims the Court has already dismissed on other grounds.

applicability [is] apparent on the face of the complaint. . ..” *See Wurtz v. Rawlings Co., LLC*, 2014 WL 4961422, at *6 (E.D.N.Y. Oct. 3, 2014) (“[T]he application [of the doctrine]. . . may be inappropriate at the motion to dismiss stage.”); *see also Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009) (noting at the motion to dismiss stage that “it is too early in this case” to adjudicate the voluntary payment affirmative defense).

As the name of the doctrine suggests, “the voluntary payment doctrine applies only to voluntary payments.” *Wurtz*, 2016 WL 7174674, at *5.  Here, Sony alleges that overpayments were made as the result of an “inadvertent internal accounting error.”  (Counterclaims ¶ 12.)  In its reply brief, Mtume declines to respond to Sony’s arguments regarding the inapplicability of the doctrine.  Because it is not apparent to the Court from the face of the claims that the payments were made voluntarily, the Court declines to dismiss Sony’s claims on this basis at this stage.

### c. Statute of Limitations

Mtume also seeks to dismiss Sony’s unjust enrichment claim to the extent it seeks recovery beyond what he contends to be the applicable three-year limitations period.  Sony counters that it is premature to resolve this issue at the pleading stage, and further that, in any event, a six-year statute of limitations applies here.  The Court disagrees with Sony on its first point, but agrees with it on the second.

As even the authority Sony cites acknowledges, while courts cannot ordinarily decide a statute of limitations defense on a motion to dismiss, “courts in this district have made an exception where (1) the complaint facially shows noncompliance with the limitations period, and (2) the affirmative defense clearly appears on the face of the pleadings.”  *Essex Capital Corp. v. Garipalli*, No. 17 Civ. 6347 (JFK), 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018) (citing *Tesla Wall Systems, LLC v. Related Companies, L.P.*, 17 Civ. 5966 (JSR), 2017 WL 6507110, at

*6 (S.D.N.Y. Dec. 18, 2017); *see also McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (statute of limitations bar warrants 12(b)(6) dismissal "if the defense appears on the face of the complaint"). "Where a plaintiff's 'claims are time-barred on the face of its own complaint, [plaintiff] has the burden of pleading facts sufficient to establish that the statutes of limitations should be tolled.'" *Essex Capital Corp.*, 2018 WL 6618388, at *2 (quoting *Voiceone Commc'ns, LLC v. Google Inc.*, No. 12 Civ. 9433 (PGG), 2014 WL 10936546, at *7 (S.D.N.Y. Mar. 31, 2014). Because the statute-of-limitations issue is apparent on the face of the counterclaims and Sony does not argue that the limitations period should be tolled, the Court finds that it is not premature to address the claim.

The Court, however, declines to apply a three-year limitations period at this time. As Sony notes, courts apply a six-year statute-of-limitations period to unjust enrichment claims pled in the alternative to breach of contract claims. *See Garson v. Garson*, No. 16 CIV. 6167 (KPF), 2017 WL 2915386, at *4 (S.D.N.Y. July 6, 2017) ("But where unjust enrichment and breach of contract are pled as alternative claims, a six-year statute of limitations period applies.") (citing *Voiceone Commc'ns, LLC*, 2014 WL 10936546, at *11); *Hongxia Wang v. Enlander*, No. 17 Civ. 4932 (LGS), 2018 WL 1276854, at *8 (S.D.N.Y. Mar. 6, 2018) ("Where, as here, Plaintiff's breach of contract and quasi-contract claims arise out of the same facts, the six-year limitations period applicable to contract claims applies.") (citing *Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 477 (1st Dep't 2013).

### E. Declaratory Judgment

Lastly, Mtume seeks dismissal of Sony's declaratory judgment claim on the grounds that it is duplicative of the other pled claims. Sony argues that the declaratory judgement claim is distinct because, while the other claims "seek the return of overpayment of royalties over the past

few years, Sony's requested declaration seeks clarification of the proper royalties moving forward." (Doc. 55 at 14.)

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "case of actual controversy" indicated by the statute refers to the types of "cases" and "controversies" justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)). "A declaratory judgment action is ripe for judicial review only if 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgement.'" *Toto, Inc. v. Sony Music Entm't*, 60 F. Supp. 3d 407, 418 (S.D.N.Y. 2014) (quoting *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d. Cir. 2005)). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree. . .." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Sony's declaratory judgment claim fails because it has not alleged any dispute between the parties. Sony argues that it inadvertently overpaid Mtume in the past, but nowhere does it allege that Mtume disagrees with Sony about the correct royalty rates that ought to be paid in the future. *See MedImmune, Inc.*, 549 U.S. at 127 (holding that in order for a declaratory judgment action to satisfy the case-or controversy requirement the dispute must "be 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of

16

facts." (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) (modifications omitted).

Sony's declaratory judgment claim is, therefore, not ready for resolution at this time and must be

dismissed.

**IV.     CONCLUSION**

    For the forgoing reasons, Mtume's motion to dismiss is DENIED to the extent it relates

to Sony's unjust enrichment claim within a six-year statute-of-limitations period, and is

otherwise GRANTED.  The Clerk of Court is respectfully directed to terminate the motion, Doc.

50.

    SO ORDERED.

Dated:     August 19, 2020
        New York, New York

                                                    Edgardo Ramos, U.S.D.J.